DONALDSON *v.* LIFE AND CASUALTY INSURANCE COMPANY OF TENNESSEE

No. 41588 November 28, 1960 124 So. 2d 701

*Murray L. Williams,* Water Valley, for appellant.

*Hugh N. Clayton,* New Albany, for appellee.

LEE, J.

Mrs. Edith E. Donaldson, as beneficiary in an insurance policy of $1,000 on the life of her husband, Woodrow Donaldson, sued Life and Casualty Insurance Company of Tennessee to recover therefor. The pertinent provision of the policy, a copy of which was attached to the declaration as an exhibit, is as follows: "Incontestability—Within two years from date of issue of this Policy, the liability of the Company under same shall be limited to the return of premiums paid if the Insured was not in sound health on the date of issuance and delivery of this Policy. After this Policy shall have been in force during the lifetime of the Insured for two years from date of issue, it shall be incontestable except for non-payment of premiums."

The answer of the defendant pled in bar (1) an executed receipt by Mrs. Donaldson for a check in the sum of $113.40, being the amount of the premiums paid by the policyholder and a release therefrom; and (2) that the policyholder, Donaldson, on the date of the issuance and delivery of the policy on February 25, 1957, was not in sound health.

The evidence showed that the date of issue and delivery of the policy was February 25, 1957, and that Mr. Donaldson died about 2:30 in the afternoon of February 24, 1959.

E. L. McVey, the treasurer of People's Wholesale Company of Water Valley, Mississippi, associated with the company since 1923, testified that Mr. Donaldson had been employed by the company for five or six years prior to his death; that his job was a strenuous one but that he was able to perform all the duties required of him; that the payroll report for 1957 showed that he worked ten hours or better each day; and that he was paid a full salary every week, plus a bonus of $50 with the last one, as a Christmas present. He admitted, on cross-examination, that in 1958 Donaldson became too disabled to perform his duties; that he was hospitalized both in Oxford and in Memphis; and that he was in a wheel chair part of the time, and then later on crutches; and that on account of his condition, the company had to let him go.

The testimony of Jasper Barron, who also worked at People's Wholesale Company, was of like effect. However, he admitted, on cross-examination, that he knew that Donaldson took insulin; that he had blisters on his feet and legs; that he lost the use of an eye, and, for a while, the use of a leg.

The plaintiff, Mrs. Donaldson, testified along the same line. On cross-examination, she stated that she and her husband had been married for twenty-three years. In 1942 or 1943, they discovered that he had diabetes. He immediately began to take insulin, and,

as he grew older, the dosage had to be increased. During the sixteen years prior to his disease, he never failed on any day to take these shots. Beginning with one, in time the dosage was increased to three, with changes from time to time. For the past several years Dr. Spears of Water Valley had treated her husband. She admitted that frequently she saw blisters on his feet and legs, that he had a sore foot, and that he lost the use of an eye, which, the doctor said, was from diabetes. His hospitalization on two different occasions for about fifteen days each was the result of his diabetic condition.

Dr. D. E. Spears, whose qualifications were admitted, was called by the defendant as a witness. The doctor had treated Mr. Donaldson in his lifetime, and, when objections were made by the plaintiff, the jury was retired. When counsel for the defendant sought to inquire about the history and the treatment of the deceased, the doctor made known that this was confidential information between him and his patient, and, without some authority, he could not release it. Over the plaintiff's objection, the court ruled that ''for the purpose of the record'' he would let the testimony be taken. Thus the doctor was required to disclose the result of his examination on August 20, 1954 and the prescribed treatment thereafter until his death. The court then sustained the objection to the testimony of the doctor, based on the knowledge which he gained from Donaldson as his patient. But the court held that, since Dr. Spears examined the deceased after his death, he would let the doctor testify as to the cause of death, and as an expert.

When the jury was returned, the doctor, upon questioning by counsel for the defendant, testified that diabetes causes a premature aging of the arteries, and that the process of arteriosclerosis is advanced beyond the usual stages at any given age. For instance, if a man of fifty had diabetes and the disease is fairly developed, his arteries will probably appear to be twenty or

twenty-five years older than his actual age, that is, equal to those of a man around seventy or seventy-five.

Counsel then stated a hypothetical question, based solely on the evidence which was brought out on cross-examination of the plaintiff's witnesses, and inquired whether or not, if that evidence was true, the deceased on February 25, 1957 was in sound health, explaining the Mississippi rule as to the meaning of sound health. The doctor's answer thereto was ''Well, certainly we couldn't say that he was in good health.''

The doctor, on cross-examination, stated that the health certificate, filled out by him, showed that Donaldson died of myocardial infarction, that is, the immediate cause of death was a heart attack.

While Mrs. Donaldson received a check of the defandent in the sum of $113.40, the total amount of the premiums paid by the decedent, she protested that the same was not sufficient to cover the liability. Actually she had not cashed the check.

At the close of the evidence, the trial court gave a directed verdict for the defendant; and from the judgment entered, Mrs. Donaldson appealed.

The appellant has assigned and argued, with earnestness, a number of alleged errors. The appellee, in its argument, has countered with like fervency that the judgment should be affirmed. When the maze of argument pro and con is cut through, two decisive questions arise: (1) Is the first sentence of the above quoted provision, namely, ''Within two years from date of issue of this Policy, the liability of the Company under same shall be limited to the return of premiums paid if the Insured was not in sound health on the date of issuance and delivery of this Policy'' valid and effective? (2) Would the court's action in requiring Dr. Spears to make a disclosure, in the absence of the jury, of the result of his examination and treatment of W. W. Donaldson, even though the doctor's evidence was not heard by the jury, constitute reversible error?

As to the first question here involved, the policy under consideration in National Life and Accident Ins. Co. v. Green, 191 Miss. 581, 2 So. 2d 838, contained the following provision: "(3) . . . Except as herein provided, if the insured is not alive or is not in sound health on the date hereof . . . the Company's full liability shall be discharged by the payment of the sum of the premiums received hereunder." The opinion, in dealing with this proposition said: "This brings us to a consideration of the effect of the policy proviso that if the insured is not in sound health on the date of the policy the full liability of the company will be discharged by payment of the sum of premiums received. It is not helpful to discuss whether this provision is in the nature of a warranty, Cooley's Briefs on Insurance, vol. 4, p. 3007, or a condition precedent, Couch, Cyclopedia of Ins. Law, vol. 4, p. 2833. In any event, it is a provision which effectively limits recovery under the policy and is part of the contract between the parties. Such is its language and import and we are impotent to impair its literal effect by invoking rules of construction available only to resolve ambiguity. Even though it be placed in the contract for the benefit of the insurer, it is binding upon the insured."

The conclusion, which was reached in the Green case, supra, was in accord with Metropolitan Life Insurance Co. v. Scott, 160 Miss. 537, 134 So. 159. That principle was also reaffirmed in Standard Life Ins. Co. v. Baldwin, 199 Miss. 302, 24 So. 2d 360. See also American Life Ins. Co. v. Walker, 208 Miss. 1, 43 So. 2d 657.

 █ Under the foregoing authorities, obviously the provision must be held to be valid and effective. The language is clear and unambiguous, and, as was said in the Green case, supra, "we are impotent to impair its literal effect by invoking rules of construction available only to resolve ambiguity."

 █ On the second question, it is necessary to consider Sec. 1697, Code of 1942, Rec., which is as follows:

"All communications made to a physician or surgeon by a patient under his charge or by one seeking professional advice, are hereby declared to be privileged, and such physician or surgeon *shall not be required to disclose the same in any legal proceeding, except at the instance of the patient or* in case of the death of the patient, *by his* personal representative or *legal heirs* in case there be no personal representative."

Since Donaldson was dead and his widow objected, it was error to require the doctor to disclose the communications which were made to him by his patient, Donaldson.

In Powell v. J. J. Newman Lumber Co., 174 Miss. 685, 165 So. 299, Powell, who claimed to have been injured as a result of negligence on the part of the appellee, was examined by a physician. In the absence of the jury, over the objection of the appellant, the doctor was permitted to testify as to the result of that examination. The court did not let this evidence go to the jury, but he did permit the doctor to testify as an expert that, if the appellant had been injured as he claimed that he was, "he could not have walked out of the hospital." The opinion cited authorities and said that the action of the court in requiring a disclosure by the physician was error and condemned this procedure in no uncertain terms, even though the evidence did not go to the jury. Besides, it said that "in a proper case we would reverse" for such error. Finally it was said: "We think, however, that the policy of the statute should be strictly observed both by the bench and bar, and that it is not permissible to develop communications before the court in the absence of the jury, and that the framing of hypothetical questions to be asked a physician as an expert, embracing matters testified to by him in the absence of consent, and his answers thereto, should not be allowed."

In the present case, while it was error to require the doctor to disclose the result of his communica-

tions, the court did not let the evidence go to the jury. The hypothetical question did not include any information which the doctor obtained from his patient, but was based on the history of the case as obtained, on cross-examination, from the evidence of the witnesses for the plaintiff.

Since the date of the issue of the policy was February 25, 1957, and the death occurred at 2:30 o'clock in the afternoon of February 24, 1959, obviously the death was within two years from the date of the issue of the policy.

Furthermore since Donaldson had been afflicted with diabetes since 1942 or 1943 with the consequent premature aging of his arteries, thus advancing the progress of arteriosclerosis from twenty to twenty-five years, manifestly the decedent was not in sound health on February 25, 1957, even though he was performing, at the time of the issue, arduous duties for his employer. The evidence and the expert opinion of the doctor could lead to no other conclusion. Thus the liability of the company, under those circumstances, was limited to the return of the premiums which had been paid. Inasmuch as the amount of such premiums was tendered to the plaintiff, the appellee fully complied with its contract of insurance.

Consequently the judgment of the trial court must be affirmed.

Affirmed.

*Hall, P. J.,* and *Arrington, Gillespie,* and *McElroy, JJ.,* concur.