205 So.2d 307 (1967)
Lona Mae ROYAL, Appellant,
v.
The BLACK AND DECKER MANUFACTURING COMPANY, A Maryland Corporation, Appellee.
No. 66-527.
District Court of Appeal of Florida. Third District.
November 7, 1967.
On Rehearing January 10, 1968.
Linet, Schwartz & Klein, North Miami Beach, for appellant.
Blackwell, Walker & Gray and William H. Dixon, Miami, for appellee.
Before CHARLES CARROLL, C.J., and BARKDULL and SWANN, JJ.
*308 SWANN, Judge.
A construction worker at a construction site was electrocuted when he attempted to connect the plug of a power drill into an extension cord. The plug of the drill was apparently not unusual in any respect, but, allegedly, it could have been designed in such a fashion as to make more remote the possibility of a direct or accidental contact with the energized prongs.
From essentially these basic facts, the worker's widow launched a three-pronged attack against the manufacturer of the drill, seeking recovery, alternatively, upon the conventional theories of negligence and warranty, as well as the more recent notion of strict liability.
The question before us is whether these facts, if taken as true, are sufficient to sustain a recovery under any of these theories. The lower court thought not, and dismissed the action with prejudice. The widow then took the instant appeal.
The liability of a contracting party (particularly a manufacturer) to a third party, not a party to the contract, for injuries suffered from an imperfect performance of the contract has had a long and often told history.
Although, as Prosser points out, the action for breach of warranty originally "sounded in tort," it became traditionally one in contract after 1778.[1] The landmark case of poor Mr. Winterbottom[2] established the principle that no action could arise from the failure to perform a contract properly unless the plaintiff was in privity with the defendant. Actions by third parties in both contract and tort were thus thwarted by the requirement of privity.
And so, the actions for breach of warranty and negligence for injuries arising from an imperfectly performed contract ran parallel to each other until 1852, when tort liability irrespective of privity was imposed upon a poison labeler for negligently mislabeling a bottle which subsequently caused harm to an unsuspecting remote vendee. Thomas v. Winchester, 6 N.Y. 397, 57 Am. Dec. 455 (1852). This principle was later held to apply to products which, by nature of their defect, became "inherently dangerous." Devlin v. Smith, 89 N.Y. 470, 42 Am.Rep. 311 (1882), and more notably in MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696 (1916).
Privity had now been abandoned as the yardstick of foreseeability in negligence actions where the product, by its very nature, or by nature of its defect, was of substantial danger to those who might use it. The road was now divided into two distinct paths; warranty followed the path of contract and negligence followed the path of tort.
In recent years, the two paths have begun to merge once again. In 1931, Judge Cardozo sounded the alarm that "[t]he assault upon the citadel of privity" was proceeding apace[3] and Dean Prosser has maintained the vigil. See Prosser, The Assault Upon the Citadel, 69 Yale L.J. 1099 (1960) and Prosser, The Fall of the Citadel, 50 Minn.L.Rev. 791 (1966). The age old doctrine of caveat emptor was gradually seen to have a limited utility in an age of highly sophisticated products when users are forced to rely without inspection or knowledge upon the competence and specialized knowledge of manufacturers.[4] Courts have been cognizant, too, of the fact that the manufacturer or sponsors *309 of a product were generally in a better position to absorb the economic burden of such losses and unmistakable trends were started to place the economic burden squarely upon the shoulders of the manufacturers. See Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1 (1960).
Strikingly similar results were achieved with an assortment of legal fictions and modifications in the application of the traditional rules governing express warranty, implied warranty, and negligence. Many new concepts were conceived, resulting in a hybrid conglomeration of terms, both contract and tort. At one point, some twentynine theories of recovery were counted,[5] but these were refined and consolidated until the theory of strict liability[6] evolved to complement the traditional warranty and negligence theories.
Distinctions between the various doctrines of product liability as they presently exist frequently have more theoretical than practical significance.[7] Whatever form of liability is pursued  whether it be negligence, warranty, or strict liability  certain common denominators are inescapable.
At the heart of each theory is the requirement that the plaintiff's injury must have been caused by some defect in the product. Generally, when the injury is in no way attributable to a defect, there is no basis for imposing product liability upon the manufacturer. It is not contemplated that a manufacturer should be made the insurer for all physical injuries caused by his products. See e.g. Restatement 2d, Torts, § 402A, comment g. Thus "courts that impose strict liability eliminating negligence as a requirement for recovery must adopt some rules or principles as a substitute for negligence as a delimiting principle."[8]
So called "strict liability" in tort is to be imposed upon the manufacturer, in the words of Justice Traynor, "when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being."[9]
What is a defect? How do we recognize the fatal flaw that imposes liability? An all-encompassing definition is elusive.
The Restatement suggests:
"* * * The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. * * *" Restatement 2d, Torts, § 402A, comment i.
The primary concern is to protect the user from the unreasonably dangerous product or from one fraught with unexpected dangers. For more extended treatment of the concept of defect see Traynor, The Ways and Meanings of Defective Products and Strict Liability, 32 Tenn.L.Rev. 363 (1965); Freedman, "Defect" in the Product, 32 Tenn.L.Rev. 323 (1965). There is no requirement upon the manufacturer beyond *310 this, however, to make an accident-proof or fool-proof product.
In the case at bar, the plaintiff has failed to allege any facts from which reasonable men might conclude that the plug was unreasonably dangerous or defective. No allegations of any latent characteristics are made or of any deviation from the norm, either in comparison with similar plugs or in comparison with those customarily used for similar purposes. There are similarly no allegations that the plug did not meet the standards of the industry or that its design contained a latent functional defect.
The plaintiff would have liability imposed for the failure to make the plug accident-proof. It is not in itself a breach of duty to supply materials which are reasonably safe and customarily used, even though the material might conceivably be made more safe, nor must the manufacturer make his product "more" safe when the danger to be avoided is obvious to all. See Evans v. General Motors Corporation, 359 F.2d 822 (7th Cir.1966); Campo v. Scofield, 301 N.Y. 468, 95 N.E.2d 802 (1950).[10]
Accordingly, the order of dismissal is hereby
Affirmed.

ON REHEARING GRANTED
PER CURIAM.
The court, having granted a petition for rehearing and after having heard further argument of counsel for the respective parties, adheres to the opinion heretofore filed.
It is so ordered.
NOTES
[1] Prosser, Torts § 95 (3rd Ed. 1964).
[2] Winterbottom v. Wright, 10 M. & W. 109, 152 Eng.Rep. 402 (1842).
[3] Ultramares Corporation v. Touche, 255 N.Y. 170, 174 N.E. 441, 74 A.L.R. 1139 (1931).
[4] See Keeton, Products Liability, 49 Va. L.Rev. 675 (1963); Keeton, Products Liability,  Liability Without Fault and the Requirement of a Defect, 41 Texas L.Rev. 855 (1963).
[5] See the "twenty-nine such triumphs of juridical technique" which Prosser cites, thanks to the "Unusual industry of Mr. Cornelius W. Gillam." Prosser, The Assault Upon the Citadel, 69 Yale L.J. 1099, 1124 (1960).
[6] Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal. Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049 (1963).
[7] "* * * liability in most situations still depends on negligence, and, moreover, some of the problems involved in proving negligence are very much the same as those related to proof of a defect in a product that will constitute the basis for a finding of breach of an implied warranty." Keeton, Products Liability, 49 Va.L.Rev. 675, 676 (1963).
[8] Keeton, Products Liability  Liability Without Fault and the Requirement of a Defect, 41 Texas L.Rev. 855, 858 (1963).
[9] Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal. Rptr. 697, 700, 377 P.2d 897, 900 (1963).
[10] See also Matthews v. Lawnlite Company, Fla. 1956, 88 So.2d 299, 301, wherein Justice Terrell, speaking for the court, stated: "An implied warranty does not protect against hazards apparent to the plaintiff; it protects against an unusual or apparent use. It does not protect against injury imposed while carelessly using a dangerous mechanism."