**VANDERCOOK AND SON, INC.,**
Appellant,

v.

**George F. THORPE, in his own right for the Use and Benefit of Reliance Insurance Company, Appellee.**

**No. 24964.**

United States Court of Appeals
Fifth Circuit.

May 14, 1968.

Rehearing Denied June 20, 1968.

James C. Rinaman, Jr., Victor M. Halbach, Jr., Jacksonville, Fla., Marks, Gray, Yates, Conroy & Gibbs, Jacksonville, Fla., of counsel for appellant.

John I. Todd, Jr., Jacksonville, Fla., Howell, Kirby, Montgomery, Sands & D'Aiuto, Jacksonville, Fla., of counsel, for appellee.

Before THORNBERRY, AINSWORTH and DYER, Circuit Judges.

DYER, Circuit Judge:

Upon retrial after this Court's order of remand[1] Thorpe was awarded a verdict of $19,000 for personal injuries he sustained when his hand was crushed in a printing press manufactured by appellant Vandercook and Son, Inc. Appellant asserts that the evidence is insufficient to support the verdict. We disagree.

It is now settled in this Circuit that in diversity cases federal courts must look to state law to determine the substantive elements of a claim for relief and look to federal law for the test of sufficiency of the evidence. E. g., Helene Curtis Industries, Inc. v. Pruitt, 5 Cir. 1967, 385 F.2d 841, 850. In Florida a manufacturer "may be held liable for breach of the implied warranty that the product manufactured is reasonably fit for the purposes intended without regard to whether the plaintiff is in privity of contract * * *." Vandercook & Son, Inc. v. Thorpe, 5 Cir. 1965, 344 F.2d 930, 931, and authorities cited therein. "[I]t is enough that the injured person be one of those reasonably intended to use the machine, and that when the injury occurred the machine was being used generally in the manner intended." Id. Furthermore, in Florida breach of implied warranty protection extends not only to mechanical defects but also to defects in design. See, Matthews v. Lawnlite Co., Fla.Sup.Ct. 1956, 88 So.2d 299 (defect in design of chair armrest). In short, under Florida law a plaintiff must show that a defect[2] existed in the product before it left the manufacturer, that this defect caused the injury, that he was a person who was reasonably intended to use the product, and that the product was being used in the intended manner.

We turn now to federal law to determine whether the case sub judice was properly submitted to the jury. "The test employed by the Fifth Circuit

1. In our first opinion, Vandercook and Son, Inc. v. Thorpe, 5 Cir. 1963, 322 F. 2d 638, we reversed and remanded the case directing judgment to be enterd for Vandercook & Son, Inc. However, on petition for rehearing we held, Vandercook and Son, Inc. v. Thorpe, 5 Cir. 1965, 344 F.2d 930, that the amended complaint alleged a claim for relief under implied warranty and remanded the cause for a new trial on that theory.

2. In attempting to define "defect" a Florida court has suggested that "the primary concern is to protect the user

from the unreasonably dangerous product or from one fraught with *unexpected* dangers. * * * There is no requirement upon the manufacturer beyond this, however, to make an accident-proof or fool-proof product." Royal v. Black & Decker Mfg. Co., Fla.Ct.App.1967, 205 So.2d 307, 309–310. Furthermore, it is apparent in Florida that it is no longer always necessary for a plaintiff to prove a specific defect in the product which injured him. Ford Motor Co. v. Cochran, Fla.Ct.App.1967, 205 So.2d 551, 553.

is that a fact issue must be submitted to the jury if reasonable men could differ on the conclusions to be reached from the evidence presented," when the evidence is considered in the light most favorable to the litigant against whom a motion for directed verdict is made. Helene Curtis Industries, Inc. v. Pruitt, supra, 385 F.2d at 850.

A review of the evidence adduced at trial convinces us that the case was properly submitted to the jury and that there is a rational basis in the evidence for the jury's verdict. Planters Manufacturing Co. v. Protection Mutual Insurance Co., 5 Cir. 1967, 380 F.2d 869. Thorpe was employed in the engraving department of the Florida Times Union which had purchased the printing press in question from appellant. One of Thorpe's regular duties was to operate this press and he was therefore clearly a person reasonably intended to use the press. The employees used this press to make proofs of pages of the newspaper in order to determine whether the engraving was satisfactory. The record is replete with testimony that in order to get a usable proof it was intended that the press be operated as follows: When an employee approached the press he would press the clutch pedal (which controlled the movement of the cylinder) to ascertain whether the press was set for semi-automatic operation. Under this setting when the clutch was depressed the cylinder would move from one end of the press to the other and stop. It was necessary to press the clutch a second time to return the cylinder to its original position. The semi-automatic setting was always used on Thorpe's work shift. After thus checking the operational setting the employee would ink the rollers and cylinder by pressing the clutch to move the cylinder back and forth along the bed of the press. The employee would then place a sheet of proof paper over an engraved plate, and press the clutch pedal causing the cylinder to move over the paper and plate. The employee then had to take approximately two steps toward the opposite end of the press so that when the cylinder stopped he could reach down to the press bed and remove the proof paper by its free end from the rollers. This was necessary in order not to smear the wet ink. The evidence is uncontradicted that Thorpe performed each step properly but that as he reached into the press to remove the paper the cylinder did not stop as it should have but reversed its course toward its original position thereby crushing Thorpe's hand. Thus the record is clear that at the time of the injury the press was being used as intended.

A resolution of the question whether there was a defect in the press poses a more difficult problem. However, we find that the record contains evidence sufficient under the federal standard to create a jury question and to support the jury's verdict. The press was, at the time Thorpe was injured, only five and one-half months old. It had an expected useful life of fifteen to twenty years and was described by one of appellant's employees as a "new machine." The machine had not malfunctioned before it injured Thorpe, but was seen to malfunction at erratic intervals over a long period of time thereafter. It ceased to malfunction only after a Vandercook employee examined it on several occasions. (No witness could say whether the Vandercook employee had adjusted the machine.) Vandercook qualified two of its employees as expert witnesses. Each testified that the only thing that could cause the malfunction was that the clutch had hung up, either because of improper lubrication or because dirt or dust had gotten into the clutch mechanism.[3] The evidence on proper lubri-

___

3. Witness Bogdan testified:
    Q. What in your opinion could cause that phenomenon [cylinder oscillation on semi-automatic setting] to occur in this machine and why?

    A. Well, the only thing that could possibly be causing a condition as such would be the condition of the clutch unit not coming down to the break surface because of it binding or seizing

cation *vel non* was in conflict. The lubrication chart for the press recommended oiling once a week.[4] The press was oiled every two weeks by an apprentice engraver and "occasionally" by at least two other employees. The apprentice testified that sometimes he would find the oil cups empty and other times they would contain oil. Vandercook employees who examined the press after Thorpe's injury found nothing wrong with the lubrication. The press had been oiled in exactly the same manner and no adjustments had been made before, at the time of, or after Thorpe's injury. Yet the machine first worked properly for a time, then malfunctioned for a time, then returned to proper functioning. Clearly, reasonable minds could differ on the issue and the jury's conclusion that lubrication was proper finds sufficient support in the evidence. Each of the expert witnesses was asked to assume that lubrication had been proper and then to give his opinion on the cause of the malfunction. Each testified that it would have been caused by dirt in the clutch.[5]

Under the circumstances present here where the machine is potentially dangerous to life and limb because normal procedures require the operator to place his hand directly in the path of the cylinder, and the clutch mechanism which controls the cylinder's movements has a tight fit and will severely malfunction if some dust or dirt is present, we think a jury could properly draw a reasonable inference that the clutch was defective either mechanically or in design in that it was unreasonably dangerous for the operator to safely reach down to lift the paper from the press. It is without dispute that no adjustments, repairs, replacement of parts or other mechanical service had been performed on the press by anyone since it left appellant's plant. A further reasonable inference can therefore be drawn that the defect existed when the press left appellant's possession, and that this defect caused the cylinder to improperly reverse itself and crush Thorpe's hand.

Affirmed.

---

because of dirt or the lack of lubrication.
Witness Waldier testified:
   A. About the only thing that could cause something like that would be the clutch hanging up.
      *      *      *      *      *
   A. Well, it's a very close fit in there or it could be dirt or it could be just dryness from lack of lubrication and actually if it was a burr or anything like that, this would tend to get worse and continue to do it more frequently, so I would have to discount a burr, so I would say it could either be oil, lack of oil, or maybe dirt.

4. Lubrication SAE #20 Motor Oil is *recommended* each week for all moving parts. Note oil cup on clutch assembly, and the various oil holes in the cam assembly. (Emphasis added.)

5. Witness Bogdan testified:
   A. We are assuming that the lubrication is identical?

   Q. Yes, sir, I'm asking you to assume that.
   A. There could be an accumulation of dirt, dust or just natural corrosion due to the temperature, humidity, those things all enter into it.
      *      *      *      *      *
   Q. Is that the best explanation you've got as to why this thing is now operating normally?
   A. It would be because of some hanging up or some possibility of dust or dirt, yes.
   Q. That's the best explanation you've got, sir, is that right?
   A. That would be the only mechanical explanation that one might give.
Witness Waldier testified:
   A. Possibly there was dirt in the clutch and if this dirt feel [*sic*] out or got into a position where it would not cause this binding, then it would cease until more dirt got in.