**Mrs. Lewis Earl LEACH, Appellant,**

v.

**The MILLERS LIFE INSURANCE COMPANY OF TEXAS,**
Appellee.

No. 24496.

United States Court of Appeals
Fifth Circuit.

Sept. 16, 1968.

Tom S. Lee, Roy Noble Lee, Forest, Miss., J. B. Everett, Decatur, Miss., for appellant.

Walter W. Eppes, Jr., Meridian, Miss., E. P. Lobrano, Jr., Satterfield, Shell, Williams & Buford, Jackson, Miss., and Huff, Williams, Gunn, Eppes & Crenshaw, Meridian, Miss., of counsel, for appellee.

Before GEWIN and COLEMAN, Circuit Judges, and HUGHES, District Judge.

GEWIN, Circuit Judge:

The Millers Life Insurance Company of Texas, the insurer, filed a petition for declaratory judgment in the United States District Court for the Southern District of Mississippi seeking a declaration of no liability on a life insurance policy in the amount of $15,000 which it issued on the life of the insured, Lewis Earl Leach. The beneficiary of the policy, Mrs. Leach, counter-claimed for the face amount of the policy. The jury returned a verdict for the beneficiary and the district court entered judgment for her in the amount of $15,000. The insurer's motion for judgment notwithstanding the verdict was then granted by the court. The beneficiary has appealed to this court and we affirm.

Although there was conflict in much of the evidence during the trial, it is undisputed that the insured signed the application for insurance on June 7, 1965; that the insurer delivered the policy to the insured on August 2, 1965; and that the insured died of cirrhosis of the liver on October 24, 1965. The insurer's declaratory judgment suit attacked the beneficiary's insurance claim on two basic grounds: (1) that the insured had misrepresented the state of his health in applying for the insurance and thus had rendered the policy voidable; and (2) that the insured was not in good health when the policy was delivered and thus the insurer was not liable under the condition precedent in the policy's good-health provision. Since we have concluded that the insurer was entitled to relief on the second ground, we have no occasion to make any further reference to the first ground.

The beneficiary contends that the district court should not have granted the insurer's motion for judgment N.O.V. With this contention we cannot agree. The good-health provision of the policy provides in part:

> This policy shall not become effective until it has been delivered and the first premium paid in advance during the lifetime and good health of the Insured. * * *

Even without considering the testimony of Dr. Ferguson, which was objected to as privileged under Mississippi's physician-patient communications statute, there can be no question that the insured was seriously ill on August 2 when the policy was delivered. The beneficiary testified that the insured had complained of stomach pain on May 19, 1965, and that he was hospitalized on the same day and remained in the hospital for three or four days. During this confinement in the hospital, the beneficiary learned that the insured was suffering from a "liver condition." She stated unequivocally that the insured had been hospitalized about three times each month from June until his death for the purpose of draining fluid accumulations. In response to a question concerning the dates of the insured's hospitalizations, she stated:

> Well, I can't say, because I can't remember all those dates, but I know he was in the hospital quite a lot, but each time—I mean, sometimes he would go in one day and he would be out the next or he would go in and be out on the third day.

When this testimony is combined with the fact, as established by the death certificate, that the insured died of hepatic failure due to cirrhosis of the liver two months and twenty-two days after delivery of the policy, the conclu-

sion is inescapable that the insured was not in good health on August 2 when the policy was delivered. In National Life & Accident Ins. Co. v. Hugger, the Mississippi Supreme Court reversed a judgment for the beneficiary on facts similar to those in this case, stating:

> The proof of death showed that deceased * * * died of cardiorenal disease * * * which the medical testimony showed was Bright's disease with heart complications and was an incurable disease and which medical testimony, not disputed, shows could not have developed within the period between September 2d and September 15th.[1]

We conclude that the beneficiary's own undisputed testimony is sufficient to require affirmance of the trial court, without relying upon medical testimony.

However, we are convinced that a portion of the testimony of Dr. Ferguson, the insured's physician was clearly admissible, *viz.*, the portion detailing the insured's medical history prior to June 7, 1965. The gist of the insured's pertinent medical history is summarized as follows: The insured entered the hospital the first time on May 19, 1965. At that time, he had been suffering for about a month from abdominal distention, loss of appetite, vomiting, and the passage of blood. The insured had accumulated fluid in his abdomen, a condition referred to as ascites by Dr. Ferguson, to such an extent that he was unable to fasten his trousers. In addition to the apparent symptoms, the doctor's examination disclosed extreme anemia and a trace of bile in the insured's urine. The diagnosis was cirrhosis of the liver and the prognosis was extremely poor. Indeed, the physician concluded that the disease was then incurable.[2] On May 20 and again on May 29, 1965, a procedure called paracentesis was performed to remove the serous fluid accumulations from the insured's abdominal area. On the first occasion, two and a quarter gallons of fluid were removed; and, on the second, two and one-half gallons of fluid were removed.

■■ The beneficiary contends that the doctor's testimony was privileged under Mississippi's physician-patient communications statute [3] and, therefore, was inadmissible in evidence. We are of the opinion, however, that the insured waived the privilege with respect to his medical history prior to submission of the in-

1. 158 Miss. 686, 131 So. 75 (1930).

2. Although we need no additional medical authority to recognize that cirrhosis of the liver is a serious disease, as a matter of interest we quote the following from eminent medical scholars to show just what a critical stage of the disease the insured had reached:

> There is no doubt that the modern all-out therapeutic attack on Laennec's cirrhosis is effective in restoring many patients to good health, provided vigorous treatment is begun at an early stage of the disease. This is reflected in the increased life expectancy reported by several investigators. However, the mortality rate is still distressingly high in patients with advanced hepatocellular failure or bleeding esophageal varices. Thus, of patients with ascites [accumulation of serous fluid in the abdomen], approximately 35 per cent are dead in 1 year, 50 per cent in 2 years, and 70 per cent in 5 years.

Harrison, Principles of Internal Medicine 1502 (3d ed. 1958). Dr. Harrison is the editor of this treatise which contains the contributions of over ninety outstanding physicians.

3. Miss.Code Ann. § 1697 (1942) (recomp. 1956) provides:

> All communications made to a physician or surgeon by a patient under his charge or by one seeking professional advice, are hereby declared to be privileged, and such physician or surgeon shall not be required to disclose the same in any legal proceeding, except at the instance of the patient or in case of the death of the patient, by his personal representative or legal heirs in case there be no personal representative.

The widow of the insured is entitled to invoke the provisions of this statute. Donaldson v. Life & Cas. Ins. Co., 239 Miss. 635, 124 So.2d 701 (1960).

surance application. The application contained the following provision:

> I waive any provision of law to the contrary, and authorize and request any physician, hospital, clinic, institution, or employee thereof, to furnish full information regarding my medical history to The Millers Life Insurance Company of Texas.

It is perfectly clear that, under Mississippi law, the physician-patient privilege can be waived by a contractual provision like the one involved here.[4] The waiver provision was incorporated into the insurance policy and was supported by adequate consideration.[5] The conclusion is, therefore, compelled that the insured's medical history prior to the date of the application was properly admitted in evidence.

■ We do not reach the beneficiary's contention that the other testimony of Dr. Ferguson was erroneously admitted in evidence. Likewise, it is unnecessary to discuss the insurer's contention that the doctor's testimony was admissible under waivers signed by the beneficiary after the insured's death. Since the doctor's other testimony was cumulative and merely added evidence of the insured's poor health, if any error was committed in admitting that testimony, it was harmless.[6]

■ The beneficiary argues further, however, that the good-health provision of the policy does not bar her recovery.

She contends that the provision means that the insured's physical condition must be the same on the date of delivery of the policy as it was on the date of application. It is true that several older cases support this view.[7] However, we are of the opinion that the Mississippi Supreme Court has repudiated those cases in fact if not in word. In both National Life & Accident Ins. Co. v. Hugger[8] and National Life & Accident Ins. Co. v. Green,[9] the Mississippi Supreme Court ignored the older authority and held that the provision means precisely what it says. On the suggestion of error in the *Green* case, the beneficiary urged the court to adopt the view of the older authority but the court declined. However, instead of overruling those cases, the Mississippi Supreme Court distinguished them to the point of being useless to the beneficiary's cause.[10] We think it clear that the *Hugger* and *Green* cases state the present law of Mississippi and that the good-health provision involved in this case means that the insured must be in good health on the date of delivery as a condition precedent to the insurer's liability.

■ A motion for judgment notwithstanding the verdict should be granted when reasonable minds could not differ on the conclusions to be drawn from the evidence, viewing the evidence in the light most favorable to the party against whom the motion was made.[11] There was no probative evidence in this case

4. Fornea v. Goodyear Yellow Pine Co., 181 Miss. 50, 178 So. 914 (1938); New York Life Ins. Co. v. Burris, 174 Miss. 658, 165 So. 116 (1936); Sovereign Camp, Woodmen of the World v. Farmer, 116 Miss. 626, 77 So. 655 (1918).

5. The policy provides that it was issued in consideration of the application and the payment of the premium specified.

6. See United States v. Crescent Amusement Co., 323 U.S. 173, 184, 65 S.Ct. 254, 89 L.Ed. 160 (1944); Fulenwider v. Wheeler, 262 F.2d 97, 100 (5th Cir. 1959); American Motorists Ins. Co. v. Landes, 252 F.2d 751, 753 (5th Cir. 1958); Brooks v. Texas Gen. Indem. Co., 251 F.2d 15, 16 (5th Cir. 1958); Fed.R.Civ.P. 61.

7. See New York Life Ins. Co. v. Rosso, 154 Miss. 196, 122 So. 382 (1929); New York Life Ins. Co. v. Smith, 129 Miss. 544, 91 So. 456 (1922); Fidelity Mut. Life Ins. Co. v. Elmore, 111 Miss. 137, 71 So. 305 (1916).

8. 158 Miss. 686, 131 So. 75 (1930).

9. 191 Miss. 581, 2 So.2d 838 (1941).

10. See National Life & Accident Ins. Co. v. Green, 191 Miss. 581, 3 So.2d 812, 136 A.L.R. 1510 (1941).

11. Vandercook & Son, Inc. v. Thorpe, 395 F.2d 104 (5th Cir. 1968); Cater v. Gordon Trans., Inc., 390 F.2d 44 (5th Cir. 1968); Helene Curtis Indus., Inc. v. Pruitt, 385 F.2d 841 (5th Cir. 1967).

183

which tended to establish that the insured was in good health. Quite the contrary, the only inference which could reasonably be drawn from the evidence was that the insured was seriously ill when the policy was delivered. We therefore agree that the judgment N.O.V. was properly entered by the district court.

Affirmed.