Scott **HARRISON**, a minor, By and Through his father and natural guardian, **James Harrison**, and **James Harrison, Individually**, Plaintiffs,

v.

**McDONOUGH POWER EQUIPMENT, INC.**, Defendant.

No. 73–542–Civ–NCR.

United States District Court,
S. D. Florida,
Fort Lauderdale Division.

June 21, 1974.

## ORDER

**ROETTGER, District Judge.**

The minor plaintiff, Scott Harrison, suffered the loss of a foot when a power mower operated by a 15-year old girl, Carolyn Holloway, ran over the young boy's leg. Scott Harrison was six at the time. The same plaintiffs had brought suit against Ira Harrison, the owner of the mower and grandfather of the minor plaintiff, and Carolyn Holloway in state court; a settlement resulting in a final judgment of $24,000 for plaintiffs was entered, which amount the parties agreed must be set off against any recovery in this case, pursuant to Florida law.[1]

Plaintiffs then brought this diversity action against the manufacturer of the riding-type rotary mower claiming, in addition to charges of negligence, strict liability and a breach of implied warranty, that defendant was negligent in not designing a safety shield or guard to be placed underneath the mower. Plaintiffs presented a professor from Iowa State who had "invented" a shield which left the forward five inches of the cutting area unprotected. However, the professor's experiment showed that the mower would substantially destroy a dead chicken when the mower ran over it without the guard but only slice off a portion of it if the guard were in place. [The shield has an obvious marketing handicap because the mower cannot operate effectively if it cuts the grass lower than a height of three and one-half inches.]

Defendant contended there was no negligence or breach of warranty for a number of reasons including the fact that the grandfather, Ira Harrison, had removed one of the throttle controls when he altered the mower a few months prior to the accident. The alteration was effected after he had owned and operated the mower for several years. Defendant further contended that the accident was caused by a combination of the inadvertence of the inexpe-

Gerald M. Walsh, of Walsh & Dolan, Fort Lauderdale, Fla., for plaintiffs.

Wesley G. Carey, and Michael C. Spring, of Carey, Dwyer, Austin, Cole & Selwood, P. A., Miami, Fla., for defendant.

1. Florida Statute 768.041(2), F.S.A.

rienced operator and the plaintiff's falling in the path of the mower while picking up stones.

At the close of all the evidence the court granted the motion of defendant for a directed verdict on the issues of breach of implied warranty and strict liability in tort but sent those issues to the jury for its deliberation along with the issues of whether defendant was guilty of negligence and whether there could have been any negligence on the part of defendant in the aggravation of the injury because of a negligent design of the mower. A number of the cases which have considered this point use the phrase "enhancement of injury." [2] The phrase "enhancement of injury" seems particularly vulgar when referring to serious personal injury and an inaccurate description of the theory which is simply the aggravation of the injury.

The court submitted the case to the jury on special verdicts asking the jury to decide four separate questions on the issue of liability: whether defendant was guilty of negligence which was the legal cause of the injury; was it guilty of any negligence which aggravated the injury; whether it had breached an implied warranty; or whether it was strictly liable in tort. The jury answered each of these questions in the negative except for the interrogatory about the aggravation of injury. The jury also found that Scott Harrison had been contributorily negligent in a percentage of 25%. The jury returned a verdict of $87,500 for the minor plaintiff and $12,500 for his father for his damages. Pursuant to Florida law on comparative negligence [3] abatement of 25% was applied to the $87,500 in addition to the setoff from the previous state court judgment.

Defendant has moved for judgment notwithstanding the verdict and the question presented is whether this court should have submitted the issue to the jury of whether defendant was negligent in a manner causing aggravation of the injury to Scott Harrison.

This diversity case must be governed by Florida law and the question of the doctrine of aggravation of damages has not been squarely resolved by a Florida court.

Defendant contends the issue has been resolved by Royal v. Black & Decker Mfg. Co., 205 So.2d 307 (Fla.App.1967). At first reading, the *Royal* decision appears to be squarely on point and the court would be *Erie*-bound to follow it. In *Royal* the appeal was from the dismissal of a complaint with prejudice; the complaint charged the manufacturer of a drill on the theories of negligence, implied warranty and strict liability in tort. Each of those questions has been answered by the jury adversely to plaintiff in the instant case. *Royal* charged that the plaintiff's decedent was electrocuted when he attempted to connect the plug of a power drill into an extension cord. The complaint alleged that the drill plug could have been designed in such a fashion as to make more remote the possibility of a direct or accidental contact with the energized prongs.

The court noted that the plaintiff failed to allege any facts to show the plug was unreasonably dangerous or defective, or that there were any deviations from standards of similar characteristics or any latent functional defects. Consequently, the Florida Court of Appeal affirmed the verdict in favor of the defendant manufacturer.

The last paragraph of the opinion contains language supporting defendant's position that it has no obligation to make the product " 'more' safe when the danger to be avoided is obvious to all." The opinion also cites the leading case of Evans v. General Motors Corp., 359 F.2d 822 (7th Cir. 1966). However, the court feels the only question presented to the Third District was whether the allegations of the complaint were sufficient to sustain a recovery under any of

---

2. See, e.g., Larsen v. General Motors Corp., 391 F.2d 495, 504 (8th Cir. 1968).

3. Hoffman v. Jones, 280 So.2d 431 (Fla. 1973).

the theories of negligence, implied warranty or strict liability in tort. The Florida Court did not reach the question presented here: whether a defendant manufacturer can be held liable when plaintiffs' injuries are not caused by but are aggravated by the negligence of failing to add a safety device, which device would make the machine more safe but not totally safe?

Plainly, Royal v. Black & Decker is dicta on this question but dictum is of help to a Federal Court in resolving *Erie* problems. Doucet v. Middleton, 328 F.2d 97, 101 (5th Cir. 1964); Tampa Electric Co. v. Stone & Webster Engineering Corp., 367 F.Supp. 27, 37 (M. D.Fla.1973). The court must agree with the observations of the Eighth Circuit Court of Appeal which expressed its dislike for the problem of "attempting to predict the course of action the highest tribunal of a state might follow under similar circumstances." Passwaters v. General Motors Corporation, 454 F.2d 1270, 1277 (8th Cir. 1972). Nevertheless, this court must attempt to determine how the Florida Supreme Court would define the extent of the manufacturer's duty to exercise reasonable care in the design of its product under the circumstances of this case based on existing Florida law and a judgment as to its probable application to areas where the law has not been fully developed.

In the field of products liability and general negligence law the trend of the Florida courts has been an expansive and liberal one with regard to affording more complete relief to the victim-plaintiffs. The Florida Supreme Court in the recent landmark case of Hoffman v. Jones, 280 So.2d 431 (Fla.1973) abolished the doctrine of contributory negligence, replacing it with the doctrine of comparative negligence because of "its more equitable system of determining liability and its more socially desirable method of loss distribution." *Id.* at 437. The court noted that legal theories must be adapted to contemporary conditions:

"All rules of the common law are designed for application to new conditions and circumstances as they may be developed by enlightened commercial and business intercourse and are intended to be vitalized by practical application in advanced society." *Id.* at 436.

In accordance with the concern for matters of public policy, the right of automobile victims to proceed directly against insurance companies was recognized in Shingleton v. Bussey, 223 So.2d 713 (Fla.1969) and expanded to allow joinder of liability insurance carriers in cases other than automobile accident cases. Beta Eta House Corp., Inc. of Tallahassee v. Gregory, 237 So.2d 163 (Fla.1970). The *Shingleton* court, by allowing the direct action, was primarily concerned that "in the modern world which is fraught with public safety hazards" injured third parties should enjoy the right "to pursue a speedy, realistic and adequate recovery action." Shingleton v. Bussey, *supra,* 223 So.2d at 717. Any other result would be "anomalous to public policy," *Id.* at 719, the court viewing public policy as a "molding device available to the judicial process by which changing realities . . . may be incorporated into our corpus juris." *Id.* at 715.

In the area of implied warranty the Florida courts have long since shed the protective cloak of the privity requirement and imposed an obligation on the distributor of an inherently dangerous commodity to take reasonable precautions to avoid reasonably foreseeable injuries to those who might use the commodity, Tampa Drug Co. v. Wait, 103 So.2d 603 (Fla.1958); Matthews v. Lawnlite Co., 88 So.2d 299 (Fla.1956); Continental Copper & Steel Indus. v. "Red" Cornelius, 104 So.2d 40 (Fla. App.1958), and eventually to the bystander as well. Toombs v. Fort Pierce Gas Co., 208 So.2d 615 (Fla.1968). The obligation includes the duty to convey to those who might use the product a fair and adequate warning of its dangerous

potentialities including possible consequences of use and even misuse. Tampa Drug Co. v. Wait, *supra*. The concern for the protection of the ordinary citizen was exhibited in Green v. American Tobacco Co., 154 So.2d 169 (Fla.1963) where the Florida Supreme Court answered the Fifth Circuit's certified question by holding that the manufacturer's inability to discover the existence of a danger through "the reasonable application of skill and foresight" did not bar recovery to the victim of lung cancer. The court reasoned that :

"There exists, we think, no real alternative and no valid objection to this distribution of the burden, if the public health is to be protected in any practical sense from exploitation by those who, for a profit motive, undertake to supply the vast and ever increasing variety of products which people by unprecedented powers of commercial persuasion are daily urged to use and consume." *Id.* at 173.

■ Faced with an unprecedented question of state law, a federal court may also be guided by the law which in its opinion provides the most just and reasoned analysis. Passwaters v. General Motors Corp., *supra*, 454 F.2d 1270, 1278; Wasik v. Borg, 423· F.2d 44, 48 (2d Cir. 1970); Putnam v. Erie City Mfg. Co., 338 F.2d 911, 917 (5th Cir. 1964). The doctrine of aggravation of injury espoused in Larsen v. General Motors Corp., 391 F.2d 495 (8th Cir. 1968) and Passwaters v. General Motors Corp., *supra*, is based on common law negligence principles. In defining the manufacturer's duty of design and construction, which is a question of law for the court, *Larsen* and its progeny state that the manufacturer is under a duty to use reasonable care in design to avoid an unreasonable risk of injury or to minimize the extent of the injury in the event of an accident.

The question is framed and the duty is defined in terms of the foreseeable risk of harm. Rejecting the manufacturer's argument that making a product reasonably fit for its intended or anticipated uses should not extend to its involvement in accidents, the *Larsen* court stated:

The manufacturer should not be heard to say that it does not intend its products to be involved in any accident when it can easily foresee and when it knows that the probability over the life of its product is high, that it will be involved in some type of injury-producing accident. 391 F.2d at 502.

The court acknowledged that the manufacturer is not under an obligation to design an accident-proof or fool-proof product. However, the court reasoned that the manufacturer's duty of reasonable care in design should be viewed in light of foreseeable risks, which includes the foreseeable risk of injury-producing accidents.

■ In light of the testimony introduced at the trial concerning the frequency of lawnmower-related accidents and the consequent number of injuries which result in the victim's ·loss of limbs, the imposition on the manufacturer of the duty of reasonable care in design to minimize or lessen the injurious effects of an accident is not unduly burdensome and is in line with the expansive trend of Florida negligence law.

For the foregoing reasons, it is

Ordered and adjudged that defendant's motion for judgment notwithstanding the verdict is denied.