561 So.2d 656 (1990)
Mary E. CUNNINGHAM and John Cunningham, Husband and Wife, Appellants,
v.
GENERAL MOTORS CORPORATION, a Corporation, and Bob Salter Chevrolet, Inc., a Corporation, Appellees.
No. 89-1209.
District Court of Appeal of Florida, First District.
May 9, 1990.
*657 Richard P. Warfield, of Warfield, Santurri & Arnold, P.A., Pensacola, for appellants.
George N. Meros, Jr., of Rumberger, Kirk, Caldwell, Cabaniss, Burke & Wechsler, Tallahassee, for appellee General Motors Corp.
Miles Davis, Pensacola, for appellee Bob Salter Chevrolet, Inc.
MINER, Judge.
This is an appeal from a dismissal with prejudice of various counts of a complaint seeking damages for personal injuries incurred by Mary E. Cunningham, due to the malfunction of a 1981 Chevette manufactured by General Motors Corporation, and sold by Bob Salter Chevrolet, Inc., to plaintiff/appellant Mary E. Cunningham. The issues presented for review are whether the trial court erred in (1) dismissing Count II, the implied warranty of fitness count of the complaint, with prejudice; (2) dismissing the second amended Count III strict liability count of the second amended complaint; and (3) directing a verdict for defendants General Motors Corporation (GM) and Bob Salter Chevrolet, Inc., at the conclusion of the plaintiffs' evidence. We affirm in part, and reverse in part.
Appellants' initial complaint was filed solely against GM. Subsequent to filing an answer and affirmative defenses to the initial complaint, GM filed a petition for removal to the United States District Court. Thereafter, pursuant to appellants' motion, the case was remanded to Escambia County Circuit Court. Appellants were granted leave to amend, to add Bob Salter Chevrolet, Inc., as a party defendant. GM then filed its first motion to dismiss, which motion was granted with leave to amend.
Appellants' second amended complaint, which is the subject of this appeal, alleged: Count I  negligent manufacture; Count II  breach of warranty of fitness for intended purpose; Count III  strict liability; and Count IV  negligent repair. GM answered, raising numerous affirmative defenses, and filed a motion to dismiss the Count III strict liability count of the second amended complaint for failure "to contain any allegations to the effect that any particular defect in the vehicle which is the subject of this litigation caused or contributed to any of the events set forth in Plaintiffs' Second Amended Complaint, or to any injuries or damages complained of." Appellants filed a letter memorandum in opposition to the motion to dismiss. The motion was granted with leave to amend.
Appellants' amended Count III to the second amended complaint was again met by GM's motion to dismiss and supporting memorandum of law. GM grounded its motion to dismiss on assertions that appellants "failed to present any specific allegations of what constituted the defect," or why such defect rendered the product unreasonably dangerous. Amended Count III of the second amended complaint was dismissed with leave to amend within five days.[1]
*658 On March 18, 1988, GM moved to dismiss the second amended Count III for failure "to allege with the requisite specificity any defect in Plaintiff's automobile that rendered it unreasonably dangerous." Also on March 18, 1988, GM moved to exclude the testimony of appellants' experts, because appellants had not responded to GM's letter dated March 3, 1988, reminding appellants of the April 8, 1988, cut-off date for discovery, and asking for names of experts. On March 31, 1988, GM filed a motion to dismiss the Count II breach of warranty count of the second amended complaint, based on Kramer v. Piper Aircraft Corp., 520 So.2d 37 (Fla. 1988).
The motions to dismiss and motion to exclude the testimony of appellants' expert witnesses were heard at the pretrial conference held April 8, 1988. Appellants' counsel argued that amended Count III of the second amended complaint alleged the defective condition of the clutch mechanism with the specificity required by case law and the Florida Rules of Civil Procedure. With regard to GM's motion to exclude expert testimony, appellants' counsel stated that two to three weeks prior to the hearing, he had advised GM's counsel of the name of appellants' expert, and further explained that the expert had not been available for consultation earlier due to his wife's illness and recent death. Appellants' counsel further noted that although his expert had been employed some three weeks prior to close of discovery, he had the prerogative to employ an expert witness up until the final date. GM's counsel argued strenuously that GM would experience substantive prejudice if it were expected to depose appellants' expert witness within the notice period provided by appellants.
By order issued April 19, 1988, the trial court granted GM's motions to dismiss Count II and second amended Count III of the second amended complaint. Both dismissals were with prejudice. Appellants filed a notice of appeal of the dismissals with prejudice, together with a motion for stay and a statement of judicial acts to be reviewed. This court dismissed the appeal as an unauthorized appeal of a nonfinal order.
On February 3, 1989, GM moved for an order in limine to preclude any reference to or introduction of evidence concerning subsequent remedial measures taken by GM and problems encountered by other owners of Chevettes. By order issued February 15, 1989, the trial court granted GM's request for sanctions, thereby excluding the testimony of appellants' expert witness. The case was tried before a jury on February 21, 1989, on the remaining counts alleging negligent manufacture and negligent repair.
We note at the outset that we find no error with regard to the trial court's rulings as to the dismissal with prejudice of the Count II implied warranty of fitness count of the second amended complaint, or the denial of a jury instruction on the res ipsa loquitur inference of negligence doctrine, and affirm the trial court's rulings in this regard. However, we find it necessary to reverse as to the second issue.
The second issue is directed to the dismissal with prejudice of the second amended Count III strict liability count of the second amended complaint. The doctrine *659 of strict liability evolved as a vehicle for recovery for personal injury or property damage resulting from use of a product, when, due to lack of privity with the manufacturer, the injured user has no recourse under traditional warranty theory grounded in contract. West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla. 1976). The rationale underlying adoption of the theory is that 
[t]he obligation of the manufacturer must become what in justice it ought to be  an enterprise liability, and one which should not depend upon the intricacies of the law of sales. The cost of injuries or damages, either to persons or property, resulting from defective products, should be borne by the makers of the products who put them into the channels of trade rather than by the injured or damaged persons who are ordinarily powerless to protect themselves.
West, 336 So.2d at 92. To recover on a strict liability theory, the user must establish (1) the manufacturer's relationship to the product, (2) the defect and unreasonably dangerous condition of the product, and (3) the existence of the proximate causal connection between the condition of the product and the user's injuries or damages. West, 336 So.2d at 87.
Dismissal of Count III in this case was predicated upon Royal v. Black and Decker Mfg. Co., 205 So.2d 307 (Fla. 3d DCA 1967), cert. denied, 211 So.2d 214 (Fla. 1968), and Rice v. Walker, 359 So.2d 891 (Fla. 3d DCA 1978), cert. denied, 367 So.2d 1127 (Fla. 1979). Royal was an appeal from a dismissal with prejudice of a wrongful death action based upon theories of negligence, warranty, and strict liability. In affirming the dismissal, the Third District found that the plaintiff failed
to allege any facts from which reasonable men might conclude that the plug was unreasonably dangerous or defective. No allegations of any latent characteristics are made or of any deviation from the norm, either in comparison with similar plugs or in comparison with those customarily used for similar purposes. There are similarly no allegations that the plug did not meet the standards of the industry or that its design contained a latent functional defect.
Royal, 205 So.2d at 310.
Similarly, Rice was an appeal from a dismissal with prejudice of a wrongful death action based on allegations of defect of components of a gas-powered model airplane. The court found that
while the plaintiff alleged various components including the hand-held control unit or mechanism were unsafe, the facts constituting such defects were not stated nor did the plaintiff allege facts showing how, as made, any such components were defective or dangerous to the user, or how they reasonably could or should have been made safe. In the absence thereof, the case of Royal is controlling. In argument of the appeal before this court reference was made to features of the components, including the grip or control mechanism, as having been constructed in a manner which subjected the user to dangers in certain respects, but those facts were not included in the complaint.
Rice, 359 So.2d at 892. Although the dismissal in Rice was affirmed, it was to be without prejudice, and the cause was remanded with directions to grant leave to amend.
At the hearing on the motion to dismiss in this case, GM's counsel emphasized the Third District's concern that a manufacturer should not be made the insurer for all physical injuries caused by his products. See Royal, 205 So.2d at 309. In West, the supreme court recognized the Third District's position, but concluded that
[s]trict liability does not make the manufacturer or seller an insurer. Strict liability means negligence as a matter of law or negligence per se, the effect of which is to remove the burden from the user of proving specific acts of negligence.
West, 336 So.2d at 90.
In contrast to the allegations described in Royal and Rice, the allegations of the second amended Count III in this case established at numbered paragraphs (1) that GM *660 was the manufacturer of the product at issue, i.e., the 1981 Chevette; (2)(a) the specific defects in the product, i.e., defective manufacture and assembly of the "clutch cable and the clutch clip," component parts of the clutch mechanism; (2)(b) the unreasonably dangerous condition of the product, i.e., "when the clutch pedal was depressed to disengage the transmission, the clutch cable and clutch clip broke;" and (3) the proximate causal connection between the defective condition and the user's injuries, i.e., the broken clutch prevented disengagement of the transmission which resulted in severe jolting and jerking of the vehicle, which jolting and jerking injured the user as she attempted to slow the vehicle before coming to a stop. Thus, the allegations of Count III appear to meet the standard suggested by the Third District in Rice v. Walker, and are in accord with the requirement that a claim for relief shall contain "a short and plain statement of the ultimate facts showing that the pleader is entitled to relief." Fla.R.Civ.P. 1.110(b)(2). In addition, the second amended Count III properly sets forth each element essential to a strict liability cause of action. See, generally, Steigman v. Danese, 502 So.2d 463, 465 (Fla. 1st DCA 1987), review denied, 511 So.2d 998 (Fla. 1987).
The allegations of second amended Count III indicate that the subject 1981 Chevette manufactured by GM malfunctioned during normal operation, and that the malfunction caused Mrs. Cunningham's injuries. Certainly GM is in a better position than Mrs. Cunningham to produce the technical evidence needed to determine the specifics of the clutch defect. The allegations of second amended Count III demonstrate that the subject product placed on the market by GM proved to have a defect that caused injury to a human being. West, 336 So.2d at 87. In addition, the allegations comply with the pleading standard set forth in West, Rice, and Florida Rule of Civil Procedure 1.110(b)(2). Therefore, the dismissal with prejudice of second amended Count III constituted an abuse of discretion.
In summary, although the dismissal of the Count II implied warranty count should have been with leave to amend, the failure to petition for rehearing precludes reversal as to the first issue. Similarly, we find no error with regard to denial of a res ipsa instruction, and the directed verdict as to Counts I and IV. However, we conclude the allegations of second amended Count III are sufficient to state a strict liability cause of action. Therefore, the trial court erred in dismissing this count of the second amended complaint.
Accordingly, we reverse the dismissal with prejudice of second amended Count III, and remand with directions to afford appellants a new trial on this issue. In all other respects, the trial court's rulings are affirmed.
BOOTH and ALLEN, JJ., concur.
NOTES
[1] The pertinent portions of second amended Count III to the second amended complaint state:

21. Prior to October 2, 1981, the Defendant, GMC, manufactured, assembled and sold a 1981 model Chevrolet Chevette automobile in an unreasonably dangerous condition in these particulars: The vehicle was equipped with a standard shift type transmission which was designed to disengage when the clutch pedal was depressed. The clutch cable and the clutch clip, component parts of the clutch mechanism, were defectively manufactured, assembled and sold as a part of the vehicle purchased by the Plaintiffs in that when the clutch pedal was depressed to disengage the transmission, the clutch cable and clutch clip broke so that when the operator of the vehicle depressed the clutch, it would not disengage the transmission. This resulted in the vehicle severely jolting and jerking when the Plaintiff, MARY E. CUNNINGHAM, attempted to slow the vehicle by braking before coming to a stop.
22. On to-wit: October 29, 1981, and on several subsequent dates, the Plaintiff, MARY E. CUNNINGHAM, was a user of the said automobile in its said defective condition which had been manufactured, assembled and sold by the Defendant, GMC. As a result of the sudden jolting and jerking of the automobile when the said Plaintiff applied brakes before bringing the automobile to a stop, which jolting and jerking was caused by the breaking of the clutch cable and clutch clip, the Plaintiff, MARY E. CUNNINGHAM, was thrown in and about the automobile injuring her.
23. The automobile in its defective condition as aforesaid reached the user, Plaintiff, MARY E. CUNNINGHAM, without substantial change in the condition in which it was manufactured, assembled and sold. The Defendant, GMC, is, therefore, strictly liable in tort to the Plaintiffs.