## ESTES *v.* MCGEHEE *et al.*

(Division B.     Oct. 15, 1923.)

[97 South. 530.   No. 23442.]

1. WILLS. *Testimony that testator was dominated necessary to submission of question of undue influence.*

   In order for the question of undue influence to be submitted to the jury, there must be some testimony upon which the jury could find that the will of the testator did not speak her real mind or intention, but that of the person who dominated and influenced her.

2. WITNESSES. *Physician held not precluded from giving nonexpert testimony as to facts and circumstances affecting testamentary capacity of patient, based on conversations derived from business and social relations.*

   Section 3695, Code of 1906 (section 6380, Hemingway's Code), does not preclude a person from testifying as a nonexpert witness to facts and circumstances based upon relations and conversations with the testator, derived solely from business and social relations, disconnected and segregated from the relation of physician and surgeon, and from giving his opinion, based upon these facts, as to testamentary capacity.

APPEAL from chancery court of Panola county.

HON. J. G. MCGOWAN, Chancellor.

Suit by R. E. Estes against Mrs. Virginia W. McGehee and others. From a decree for defendants, plaintiff appeals. Affirmed.

*Holmes & Sledge,* for appellant.

I.  If there is one proposition of law that has been fully and finally settled by the courts of our state, it is that under section 3965 of the Mississippi Code of 1906, Hemingway's Code, section 6380. A family physician is prohibited from testifying without the consent of his patient. The patient in this case, Mrs. Cornelia Wallace Estes, was dead, and this contest was waged over an instrument of writing purporting to be her last will and testament. Of course, the prohibition of said section 3695, Code of 1906, against the disclosure by a physician or a surgeon—survives the death of the patient and could not be waived by the patient's heirs, executor, or administrator. *McCaw et el.* v. *Turner, et al.,* 80 So. 705. The trial court committed grave error in permitting Dr. A. P. Alexander, the family physician of the said Mrs. Cornelia Wallace Estes, deceased, to testify at all, either as to her condition mentally or otherwise, either before or in the absence of the jury, over the objection of appellant. In the instant case, the physician was questioned by the court to ascertain whether he had knowledge by reason of the relation of physician and patient, and, we believe if it were so acquired, it ought to be excluded. *United States Fidelity & Guaranty Company* v. *Hood,* 87 So. 115. When it is shown that the information gained and obtained by the physician from the testatrix is based, as a physician, and especially when the physician himself admits that as to the question of mental capacity it would be hard to segregate his opinion as to same obtained as such physician and otherwise, such evidence is inadmissible. *United States Fidelity & Guaranty Company, supra; Hunter* v. *Hunter et al.,* 90 So. 440.

II.  The court erred also in permitting Dr. B. N. Ward to testify as to the matters and things related by him as to the mental capacity of the said testatrix. We are aware that this court has not passed upon the question as to whether or not the Privilege Communication Statute has been repealed by implication by the enactment of

law creating a Bureau of Vital Statistics and we have noted the opinion rendered by the supreme court in the case of *Hunter* v. *Hunter, supra,* and in which said opinion the court said "should a case arise where proof by certificate under this act is offered in evidence, we will then determine to what extent, if any, the act repeals the said section 3695, Code of 1906, section 6380, Hemingway's Code, known as the Privilege Communication Statute."

We submit that this law, sections 4869 to 4874, Hemingway's Code, does not repeal the Privilege Communication Statute unless it is repealed to the extent, as set forth in the opinion in the said cause of *Hunter* v. *Hunter, supra,* "that a registrar's certificate made up from the statistics or information obtained from the attending physician of the patient may be introduced in evidence to show the character of sickness or cause of death of the patient."

III.   The question of undue influence should have been submitted to the jury in this case, since the testator is shown to have been in a state of physical feebleness or mental weakness when the will was executed.   28 R. C. L. 139, section 92, Wills.   The appellant was entitled in this case to have submitted to the jury the question of whether or not the influence exercised by his sister over his mother was not an undue influence, an influence which controlled the mental operation of the testatrix and whether or not it overcame her power of resistence, obliging her to adopt the will of said daughter rather than her own, and whether or not the influence of the said Caroline Wallace Estes over her mother did not produce a disposition of property which the testatrix would not have made if left freely to act according to her own pleasure.

*Montgomery & McClure,* for appellees.

I.   THE TRIAL COURT SHOULD HAVE GRANTED A PEREMPTORY INSTRUCTION ON BEHALF OF THE PROPONENTS.

Taking all of the testimony of contestants' witnesses as true, there was not sufficient evidence in the case to sustain any issue in favor of the contestant which was raised by the pleadings in the case.

If the contestant in this case failed to establish his case to such an extent that a peremptory instruction might properly have been given against him by the trial court, he cannot complain of any alleged error the trial court might have committed, either in the introduction of evidence or in granting or refusing any instructions in the case. *Blackwell* v. *Graham,* 74 Miss. 595; *Fletcher* v. *Sovereign Camp,* 81 Miss. 249; *Barringer* v. *Nesbit,* 1 S. & M. 22; *Davis* v. *Black,* 5 S. & M. 226; *McMullen* v. *Mayo,* 8 S. & M. 298; *Ryan* v. *Cargill,* 24 Miss. 540; *Cogan* v. *Frisby,* 36 Miss. 178.

II.  TESTAMENTARY CAPACITY.  The rule is that the mental capacity of the testatrix is to be tested as of the date of the execution of the will and temporary or intermittent insanity or mental capacity does not raise a presumption that it continued to the date of the execution of the will. *Scally* v. *Wardlaw,* 123 Miss. 875 (878); *Lum* v. *Lasch,* 93 Miss. 81; *Moore* v. *Parks,* 122 Miss. 301; 1 Alexander on Wills, p. 327; 1 Schouler on Wills, p. 134.

III.  THE TESTIMONY OF DR. A. F. ALEXANDER WAS COMPETENT AND WAS PROPERLY ADMITTED IN EVIDENCE BY THE TRIAL COURT.  Dr. Alexander was not introduced as an expert witness.  He had known Mrs. Estes for about twelve years before her death.  The witness and Mrs. Estes were neighbors, were members of the same church, and trustees for the church.  He visited frequently in her home in a social way, at other times he was in her home in a professional way on visits to her husband, Capt. Estes, and her daughters, at which times he always saw Mrs. Estes and conversed with her.  He had also some business transactions with the testatrix, one involving the execution of notes and a deed of trust for a loan which the

Christian Church of Como had negotiated from the Missionary Society of that church in the year 1916, about a year subsequent to the date of the execution of the will. From his long association and intimate acquaintance with Mrs. Estes in a social and business intercourse, wholly disassociated from, and independent of any professional relations with her, the witness was easily able to form an opinion of her mental condition at the time of the execution of the will, which opinion was, that she was of sound mind.

It will be noticed that the witness based his testimony solely upon knowledge and information derived from social and business intercourse with the testatrix, entirely independent of, and wholly dissociated from any professional relations. In other words the witness was not called upon to, and did not in his testimony divulge any "communication made to him by a patient under his charge or by one seeking professional advice," contrary to section 6380, Hemingway's Code (section 3695, Code of 1906). The statute does not disqualify a physician from testifying to any fact within his knowledge, unless expressly or by necessary implication, he is prohibited from doing so by the provisions of the statute. *William Lourie Co.* v. *McCullough,* 90 N. E. 1014, 92 N. E. 337. The rule of statutory construction has been succinctly stated by this court in the case of *Moore* v. *Rowe,* 53 So. 626, as follows: "In construing a statute the evil to be remedied must be kept in view; and its construction must be made to accomplish the purpose intended, if not violative of its plain provisions." The evil sought to be remedied by the legislature in the enactment of the statute in question, was the disclosure by a physician or surgeon of any communication made to him by his patient, or by one seeking professional service. It was never intended to disqualify a physician generally in respect to the condition of a person who had at some time been a patient, where the physician speaks from knowledge acquired when no relation of physician and patient obtained, and where his

testimony did not involve a disclosure of any privileged communication.   Only the secrets of the sick chamber were protected.   *Bower* v. *Bower,* 142 Ind. 194, 41 N. E. 523.

The privilege extends only to matters which are in their nature confidential, and does not prevent a witness from testifying as to matters, the disclosure of which violates no breach of professional confidence.   The following cases contain instructive discussions on this proposition: *Seifert* v. *State,* 160 Ind. 464, 67 N. E. 100, 98 A. S. R. 340; *Hamilton* v. *Crowe,* 175 Mo. 634, 75 S. W. 389; *Becker* v. *Metropolitan Life Insurance Co.,* 90 N. Y. Supp. 1007; *Sutcliffe* v. *Iowa State Travelling Association,* 119 Iowa 220, 93 N. W. 90; *Cooley* v. *Flotz,* 85 Mich. 47, 48 N. W. 176; *Jacobs* v. *Cross,* 19 Minn. 523; *Chlanda* v. *St. Louis Transit Co.,* 213 Mo. 244, 112 S. E. 249; *Green* v. *St. Louis Terminal Association,* 109 S. W. 715; *Griffiths* v. *Metropolitan Street Railway Co.,* 171 N. Y. 106, 63 N. E. 808; *Fisher* v. *Fisher,* 129 N. Y. 654, 29 N. E. 951; *Boyle* v. *Robinson,* 109 N. W. 623; *Steketee* v. *Newkirk,* 148 N. W. 1034, 173 Mich. 222; *Booren* v. *McWilliams,* 145 N. W. 410, 26 N. D. 558.

IV.   THERE WAS NOT A SCINTILLA OF EVIDENCE OF UNDUE INFLUENCE IN THE EXECUTION OF THE WILL.   See *Sanders* v. *Sanders,* 126 Miss. 610; *Moore v. Parks,* 122 Miss. 301; *Sheehan* v. *Kearney,* 82 Miss. 688.

V.   A LAST WILL AND TESTAMENT MAY CONSIST OF ONE OR MORE SEPARATE WRITTEN DOCUMENTS.   The two instruments here cannot constitute one will.   The contention is that a will to be valid must be embraced within one document.   This contention is wholly without merit. 28 R. C. L., p. 114, sec. 66; *Menzies* v. *Umphelby,* 77 L. J. P. C. 64, T. N. S. 509, 24, Times L. Rep. 344, British Ruling Cas. 509; *Osborn* v. *Rochester Trust Co.,* 209 N. Y. 54, 102 N. E. 571, 46 L. R. A. (N. S.) 9831; *Parnell* v. *Thompson,* 81 Kan. 119, 105 Pac. 502, 33 L. R. A. (N. S.) 6581.

VI. Counsel for Appellant Complains Because of the Introduction of the Certificate of the Bureau of Vital Statistics in Respect to the Death of Mrs. Estes. This certificate was introduced by the contestant without objection upon the part of the proponents. This court has firmly established the rule that no objection can be made on appeal by either party to rulings of the trial court which were favorable to, or made at the instance of the party who appeals, and who alone assigns error. *Ouilett* v. *Davis,* 69 Miss. 762; *Planters Compress Co.* v. *Ireys,* 16 So. 386; *Chisby* v. *M. & O. Ry. Co.,* 78 Miss. 937; *Sparkman* v. *Graham,* 79 Miss. 376; *Johnston* v. *Walker,* 86 Miss. 757.

VII. The Evidence in the Case Establishing Sufficient Mental Capacity in the Testatrix was so Overwhelming that the Verdict of the Jury in Favor of the Will, Will not be Disturbed, Even Though the Court Might Find There was Error in the Admission of Testimony. *Barranger* v. *Nesbit,* 1 S. & M. 22; *Davis* v. *Black,* 5 S. & M. 226; *Vohr* v. *Steamboat,* 7 S. & M. 715; *McCuller* v. *Mayo,* 8 S. & M. 298; *Magee* v. *Harrington,* 13 S. & M. 403; *Fletcher* v. *State,* 60 Miss. 675; *Rothschild* v. *Hotch,* 54 Miss. 554.

Argued orally by *F. H. Montgomery,* for appellees.

Sykes, P. J., delivered the opinion of the court.

The appellant, R. W. Estes, by his bill seeks to have set aside and canceled of record the probate of the purported last will and testament of Mrs. Cornelia Wallace Estes. This alleged will is a holographic one, on two separate sheets of paper; the one of date April 17, 1915, disposed of her property in Mississippi, that of April 23, 1915, of her property in Memphis. These two instruments were probated in common form. The beneficiaries were the daughters, the appellees in this case. The appellant, contestant, was only left a very small sum of money in each of

these instruments. It is unnecessary to set out in full these two papers. Suffice it to say that the testimony shows overwhelmingly that they were wholly written and signed by the testatrix, and were not materially altered, and were in no wise inconsistent one with the other, and both constituted and comprised her disposition of her property. Upon the issue of *devisavit vel non* the jury returned a verdict in favor of the proponents of the will, and decree was accordingly entered establishing the will, from which decree this appeal is prosecuted.

Upon the question of undue influence the learned chancellor gave a peremptory instruction in favor of the proponents. The appellant insists that this was error, and that under the testimony this question should have been submitted to the jury. Mrs. Estes, the testatrix, was about sixty-nine or seventy years old at the time she executed this will. She was the owner of both real and personal property. The testimony shows that for awhile she looked after the management of the property herself, for awhile her son, the appellant, looked after it, and for awhile previous to and after the execution of this will her daughter, Miss Caroline Wallace Estes, looked after it; that testatrix was rather a nervous delicate woman, and had suffered some years with a goiter. When Mrs. Estes was managing her business, she had rented a plantation for some years to some merchants for a rental annually of ten bales of cotton. One of these merchants testified that it had been his custom, acquiesced in by Mrs. Estes, to sell this cotton and credit her account therewith; that upon the occasion in question Miss Caroline told him not to sell the cotton, but deliver it to her. He talked with Mrs. Estes about it, and she told him:

"Carrie wants to take charge of it, and I can't help it. It has been all right with me, the way you have been doing."

And he further stated that it looked like Miss Carrie wanted to take charge of the business, and would do it, whether Mrs. Estes wanted her to do it or not. This wit-

ness also stated that it appeared to him Mrs. Estes was
under the influence of her daughter.

Assuming that in this business transaction Mrs. Estes
was influenced by her daughter, and permitted her daugh-
ter to manage it as she wished, this is no evidence of un-
due influence, and especially of any undue influence exer-
cised upon the testatrix in the making of the will.  It is
unnecessary to distinguish between what might be termed
a proper influence and an undue influence.  .There is no
testimony to show that the testatrix in the preparation
of this will was in any wise or in any manner influenced
by this daughter.  In order for this question to have been
submitted to the jury, there must have been some testi-
mony from which the jury would have been justified in
believing that this will of testatrix did not speak her
real mind or intentions, but rather was the will of her
daughter, Miss Caroline.  *Sanders* v. *Sanders,* 126 Miss.
610, 89 So. 261; *Scally* v. *Wardlaw,* 123 Miss. 857, 86 So.
625.   In this case the uncontradicted testimony shows
that the testatrix had for some time intended to execute
her will as it was subsequently executed.

The testimony for testamentary capacity was submitted
to the jury.  Upon this issue the jury found in favor of
the proponents, viz. that Mrs. Estes was of sound and
disposing mind and memory when she executed the will.
The jury could have found no other way.  Without review-
ing in detail the testimony, the chancellor would have been
warranted in giving a peremptory instruction on this
question, also, in favor of proponents.  None of the tes-
timony introduced by the contestant showed that before
or about the time of the execution of this will the exec-
utrix was insane.  Some witnesses expressed the opinion
that in their judgment she was insane at certain times,
but, when the facts upon which their opinions are based
are examined, it is manifest that this conclusion should
not have been drawn by them.  On the other hand, the
sanity of the testatrix at the time of the execution of the
will was overwhelmingly proven by the proponents.

It is insisted by appellant that the chancellor erred in allowing the testimony of Dr. Alexander to go to the jury. For some years before the death of testatrix Dr. Alexander was her family physician. As such he had probably made professional calls upon her before the will was written. He had also before that time treated professionally the husband of testatrix. He and testatrix were members of the same church. They served on a committee which built the church and borrowed money and mortgaged the church property. He also was in the habit of making social visits to the home of testatrix. When Dr. Alexander was offered as a witness by the proponents, the contestant objected to his testifying, because of section 3695, Code of 1906 (Hemingway's Code, section 6380), which read as follows:

"All communications made to a physician or surgeon by a patient under his charge or by one seeking professional advice, are hereby declared to be privileged, and such physician or surgeon shall not be required to disclose the same in any legal proceeding, except at the instance of the patient."

He was examined in the absence of the jury, and testified about his professional relations, as well as his business and social relation. He stated in this examination that he thought he could segregate the knowledge obtained as a physician from that obtained socially and in church work. He was then offered to the jury as a nonexpert, basing his opinion upon his observation of Mrs. Estes from their association in church work and social visits. He was expressly enjoined to state this opinion thus formed not rofessionally, but from social and business observation. He distinctly stated that this opinion was not formed from his professional visits. He did not testify as an expert; neither did he testify as to the opinion he formed of her mental condition because of his professional visits. This statute only makes privileged communications made to a physician or surgeon by a patient under his charge. The facts testified to by Dr. Alexander as a nonexpert,

upon which he based his opinion that Mrs. Estes was sane, were carefully limited to those obtained from his observations and conversations with her during their business for the church and social visits, disconnected from professional visits, and therefore these facts and this information were in no wise formed or based upon any information received or obtained while the relation of physician and patient existed. The chancellor was correct in admitting this testimony.

*Affirmed.*