Powell v. J. J. Newman Lumber Co.

(Division B.   Jan. 13, 1936.)

[165 So. 299.   No. 31891.]

Cephus Anderson and T. J. Wills, both of Hattiesburg, for appellant.

Lamar Hennington and **Heidelberg & Roberts,** all of Hattiesburg, for appellee.

Argued orally by **Cephus Anderson**, for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

The plaintiff, Lige Powell, appellant here, brought suit against the J. J. Newman Lumber Company, appellee here, for an alleged personal injury. The declaration states that the J. J. Newman Lumber Company operates log cars upon which they carry logs from Perry and Greene counties into the mill plant in the city of Hattiesburg; that these log cars were constructed of timber; and that the logs were carried parallel to the cars and fastened thereto by means of toggle chains, and that when the cars were emptied, the chains were placed on the cars in such manner as to be unsafe, not being properly fastened, and being permitted to drag. That the appellant was traveling on Highway 49 east upon a private truck which developed engine trouble, and he started to walk back to Hattiesburg and came to the point where the highway crossed the tracks of the railroad company; that a log car was approaching, and appellant stopped to await its passing; and that one of the toggle chains swung in such a manner as to strike the appellant around the body and then struck a telephone post. The declaration further states that the appellant suffered severely from such injury, and that his eyes were in-

jured by dirt, etc., and that when some one picked him up and carried him to a hospital, the hospital refused to receive him because he did not have the money to pay his expenses, and that he went to a private residence where he remained until he was able to go to his home. A witness for the appellant testified that he came along on the evening in question, and that when he reached the point where Highway 49 crosses the railroad tracks he observed the appellant and a negro lying out by the side of the ditch, and that there was a piece of chain on the appellant, and that chain was also wrapped around the telephone post; that he took the appellant to the hospital in Hattiesburg and they declined to receive him.

The appellant alone testified as to where and how he was injured, and the negro who was alleged to have been with him was not introduced as a witness.

The nurses at the hospital testified that the appellant came there, and that they observed him and saw no injuries, and that he walked out, and, apparently, he had no injuries.

The appellant was examined by a physician who was permitted, in the absence of the jury, to testify as to his examination of the appellant, and this physician stated that appellant had no injuries other than a little sand in his eyes. This evidence was not permitted to go to the jury, but the physician was placed on the stand and testified as an expert, and as such testified that if the appellant had been injured as he claimed to have been injured, he could not have walked out of the hospital. This physician denied that the appellant had been refused admission to the hospital because of lack of money, but because there were no injuries to be treated which required hospitalization. There was objection to the testimony of this physician, and to the testimony of the nurses, which latter objection was by the court overruled, as was also the objection to the testimony of the physician in answer

to the hypothetical questions propounded to him as an expert.

The appellee investigated as soon as it was notified that the appellant claimed to have been injured, and had examinations made of the place and all the log cars. According to the evidence for the appellee, there was no sign of a chain having been dragged along the track, and no sign of any injury to the stop sign at the crossing, or at the telephone post, and that the chain must have moved, according to the evidence, by this stop sign to the point where the alleged injury occurred. The testimony for the appellee showed that the logs were fastened by a piece of iron forming a U bolt, and could not be pulled out on account of the method by which same was fastened, and that none had ever been pulled out in the history of the operations of the appellee.

It was shown that one of the cars had this U staple removed. It was the theory of the appellant that the chain was severed by being run over by one of the wheels on the track, and he testified that he saw sparks emanating from the track just prior to being struck.

The testimony of the alleged experts for the appellee showed that the chain, if severed, would drop and not fly out to the side of the car as indicated by the appellant's evidence.

This is a mere rough outline of the evidence, which is rather prolix, and on the evidence the jury found a verdict for the J. J. Newman Lumber Company.

We have examined all the evidence, and we think, if the jury had found for the appellant, the court would not have permitted the verdict to stand, and while there are features of the trial which we do not approve, as will presently appear, we would not reverse the finding of the jury upon the character of evidence in this record, because we conceive that substantial justice lies in the verdict of the jury on the facts contained in the record.

Some of the instructions tell the jury that before they could find for the plaintiff he must have proven to their satisfaction a certain hypothesis, as for instance: "The court instructs the jury for the defendant. that before you can find a verdict against the defendant in this case, the plaintiff must have proven to your satisfaction that the defendant was guilty of negligence, and in this connection, the court tells you that negligence means a failure to exercise that degree of care which a reasonably prudent person would have exercised under the circumstances." The court should not have required a plaintiff to prove a case to the satisfaction of the jury without qualifying the standard and measure of evidence necessary. The words "satisfaction of the jury" were improper. It should have been stated as "by a preponderance of the evidence." The giving of instructions containing the phrase "to the satisfaction of the jury" may or may not be reversible error according to the facts of the given case. It has been pointed out by this court heretofore that the word "satisfaction," unlimited by other language, was equivalent to requiring proof beyond a reasonable doubt; but in the case at bar we would not reverse for this error.

We also think it was error for the court to admit the evidence of a physician called by a party to the suit over the objection of the patient. The statute (Code 1930, section 1536) makes the matter of communications to a physician, and what he learns in the course of his examination of a patient, privileged, and it cannot be introduced or divulged without the consent of the patient. In ruling on this objection, the trial court said: "Our court has decided that question two ways. One way they held that if the testimony of the doctor was not before them, they were not able to pass on it; the other, that it was improper to interrogate the doctor at all, either in the presence or absence of the jury, but where the plaintiff himself has disclosed all the facts pertaining to

the injury, and the doctor is offered in the absence of the jury, the court has been holding, and will hold now, for the purpose of the record only, that the doctor may testify. Let the objection be overruled.''

We do not understand that the court has ruled two ways upon this proposition. In defense of this ruling, the appellee cites New Orleans & N. E. R. Co. v. Scarlet, 115 Miss. 285, 76 So. 265, 266, wherein the court said: ''We cannot review the exclusion by the court below of certain testimony sought to be elicited by appellant from Dr. Reynolds on his examination in chief; for the reason that, while the record discloses the questions sought to be propounded to the witness, it does not disclose what his answers thereto would have been so that we may judge of the materiality and relevancy thereof to the issue being tried, and, if material, whether appellant was prejudiced by the exclusion thereof,'' citing Mississippi Cent. R. Co. v. Robinson, 106 Miss. 896, 64 So. 838, which does not hold that a physician may be examined in the absence of the jury, but in the presence of the court. The well-known practice is for counsel to state what he expects to prove by a physician, if permitted. This is quite different from having the physician mount the witness stand in the presence of the court, attorneys, and audience, and disclose all private and privileged matters covered by the statute giving the patient the right of privileged communications. In Mississippi Cent. R. Co. v. Robinson, 106 Miss. 896, 64 So. 838, 842, cited in the Scarlet case, supra, the court said that: ''The proper practice is for the party whose evidence is rejected to state and show by his bill of exceptions what the tenor of the proposed testimony was, in order that the trial judge, and this court on appeal, may determine its relevancy and competency.'' A statement by counsel to the court as to what he expects to prove will carry to the legal and judicial mind the purpose of the evidence as freely as though it would if testified to, but it makes a

very different impression upon the popular and nonlegal mind. Such statements are often termed "lawyers' talk," and do not carry to the popular mind the full truth of the purported testimony, and are less prejudicial than would be the testimony of a physician who would probably disclose in full the privileged matters.

In United States F. & G. Co. v. Hood, 124 Miss. 548, 87 So. 115, 15 A. L. R. 605, we distinctly held that it was not proper to permit a physician to testify, even in the absence of the jury, as to privileged matters, *except with the consent of the patient*, holding that the inquiry should be limited to determining whether such relation of physician and patient existed, and that, if so, all matters learned by him by virtue of such relation should not be permitted to be disclosed to the court.

It is true that in some cases we have held that a physician could testify as an expert to matters that he did not learn in the relation of physician and patient. Estes v. McGehee, 133 Miss. 174, 97 So. 530; Dabbs v. Richardson, 137 Miss. 789, 102 So. 769; Watkins v. Watkins, 142 Miss. 210, 106 So. 753. But in the case of Gulf M. & N. R. Co. v. Willis, 171 Miss. 732, 157 So. 899, 158 So. 551, 552, the matter was discussed, and we supposed was clearly settled in the minds of the bench and bar that the testimony of physicians could not be admitted even in the absence of the jury, but if the matter was not privileged testimony it could be developed by examination of the witness in the absence of the jury. In that case a dentist was offered as a witness for the defendant as to the extent of injuries suffered which knocked some of his teeth loose. We there held that a dentist was not a physician, and that the statute would not be extended to include persons not within its terms, and further that there was no sufficient statement of facts expected to be developed by this witness if permitted to testify. As shown by the record, that case called for the testimony of a dentist. To a suggestion of error filed therein Judge GRIFFITH said

as follows: "To the rule last stated there are a few exceptions, and one of these is when a witness is tendered and it is sought to examine him upon matters which the law forbids him to disclose. For instance, the law forbids that an attorney shall disclose the knowledge which he has acquired from or for his client in and about his client's business. When an attorney is placed on the witness stand and, without his client's consent, it is attempted to interrogate him about his client's business, the witness is not only privileged to refuse to answer, it is his duty to refuse. And the offerer cannot state into the record what he expects to prove by that witness, for the law denies the right to prove by that witness anything of the matters sought to be elicited. Likewise as to a physician, upon which subject this court said in United States F. & G. Co. v. Hood, 124 Miss. 548, 571, 87 So. 115, 15 A. L. R. 605: 'The evidence of a physician ought not to be received before the court, and it is error for the court to proceed upon the idea that the judge and the public may hear the statement of the physician in such case, though it be excluded from the jury.' In these cases if the knowledge sought to be placed in the record was acquired during the existence of the relationship which makes the information privileged, then the inquiry is not permitted to proceed further than to develop the actual existence of the privileged relationship."

It will be seen that we have distinctly held that it is not permissible to examine a physician over the objection of a patient as to matters communicated to the physician, or learned by him as the result of an examination, or communications between a physician and patient. The object of the statute is not merely to protect parties from the result of lawsuits which the evidence might affect, but the object of the statute is to permit people freely to consult physicians about their physical or mental condition, and about any treatment for any ailment they may have or think they have,

It seems to be argued that we could not reverse a case for the violation of the statute where the evidence did not go to the jury. We are unable to assent to this doctrine. We know, as all other men know, that matters of this kind frequently acquire a circulation that reaches, at times, into the secrecy of the jury box and does its damaging work there. In a proper case we would reverse, but just what a proper case would be is not now necessary to announce. We think, however, that the policy of the statute should be strictly observed both by the bench and bar, and that it is not permissible to develop communications before the court in the absence of the jury, and that the framing of hypothetical questions to be asked a physician as an expert, embracing matters testified to by him in the absence of consent, and his answers thereto, should not be allowed.

Notwithstanding the matters above noted, since the judgment contains substantial justice, and also that a verdict contrary to the one rendered would have been reversed, the judgment will be affirmed.

Affirmed.