354 So.2d 1095 (1978)
Gerald R. McCAY et al.
v.
Mrs. Patsy JONES.
No. 49779.
Supreme Court of Mississippi.
February 1, 1978.
Rehearing Denied February 22, 1978.
*1096 Jacobs, Griffith & Povall, Benjamin E. Griffith, L. Ellis Griffith, Cleveland, for appellant.
Sullivan, Smith, Hunt & Vickery, F. Ewin Henson, III, Clarksdale, for appellees.
Before PATTERSON, ROBERTSON and SUGG, JJ.
SUGG, Justice, for the Court:
Plaintiff, Mrs. Patsy Jones, recovered a judgment in the Circuit Court of Coahoma County against defendants, Gerald R. McCay and United Parcel Service, Inc., in the amount of $15,000 for injuries received in a collision between the vehicle which plaintiff was driving and the vehicle operated by McCay for United Parcel Service, Inc.
*1097 The two issues decided in this case do not involve the defendants' liability, but only affect the damages awarded by the jury. We affirm as to liability and reverse and remand for a trial on the issue of damages only.

I.
The first assignment of error which we consider is:
The Court erred in sustaining Appellee's motion in limine requiring Appellants not to bring two doctors and a medical records director into the courtroom during the trial in the presence of the jury.
Before trial, plaintiff filed a motion in limine in the following language:
Now comes plaintiff and moves the court prior to the trial of this cause that the court order and direct the defendant during the trial not to call as witnesses Dr. Edwin Hemness, Dr. Joe Campbell, and Mrs. Gwen Daves, Medical Records Librarian of the Northwest Mississippi Regional Medical Center.
Plaintiff would state unto the court that the testimony of such individuals is privileged under section 13-1-21 of the Mississippi Code of 1972, Annotated, and that plaintiff does not desire to waive such privilege. Plaintiff would further state unto the court that allowing the defendant to call such witnesses in order to force the plaintiff to invoke such privilege in the presence of the jury would be highly prejudicial.
The motion in limine was not considered by the court until plaintiff was cross examined by counsel for defendants and asked if she was willing for the two doctors named in the motion to testify about her condition. Plaintiff's counsel objected and, following arguments in chambers, the court sustained the motion.
After the collision in which plaintiff was injured, she was treated by four physicians, but called only one to testify in her behalf. When the court sustained the motion in limine, it prevented defendants from calling as witnesses two of the doctors who had treated plaintiff following the collision. This action of the court goes far beyond preserving the privileged communication between a physician and his patient and prevented defendants from calling two physicians who had treated her as witnesses for any purpose whatever. While section 13-1-21 Mississippi Code Annotated (Supp. 1976)[1] makes all communications between a patient and physician from whom the patient has sought professional advice privileged, it does not make the physician incompetent as a witness, but only prevents the physician from testifying as to any privileged communication. In Donaldson v. Life and Casualty Ins. of Tenn., 239 Miss. 635, 124 So.2d 701 (1960) we held that the statute does not prohibit a physician from answering a hypothetical question which does not contain any information which the physician obtained from his patient. We also held in Dabbs v. Richardson, 137 Miss. 789, 102 So. 769 (1925) that although a physician could not testify to the facts and information received by him in his professional capacity, he was competent to testify as to his knowledge concerning mental conditions derived from social or business relationships with the patient. We also held in G., M. & N.R. Co. v. Willis, 171 Miss. 732, 157 So. 899 (suggestion of error 158 So. 551) (1935) that the statute making communication between a physician and his patient privileged must be limited to its language and clear purpose, and should not be extended by construction. In Powell v. J.J. Newman Lumber Co., 174 Miss. 685, 165 So. 299 (1936) we stated:
It is true that in some cases we have held that a physician could testify as an expert to matters that he did not learn in the relation of physician and patient. *1098 Estes v. McGehee, 133 Miss. 174, 97 So. 530; Dabbs v. Richardson, 137 Miss. 789, 102 So. 769; Watkins v. Watkins, 142 Miss. 210, 106 So. 753. But in the case of Gulf M. & N.R. Co. v. Willis, 171 Miss. 732, 157 So. 899, 158 So. 551, 552, the matter was discussed, and we supposed was clearly settled in the minds of the bench and bar that the testimony of physicians could not be admitted even in the absence of the jury, but if the matter was not privileged testimony it could be developed by examination of the witness in the absence of the jury. In that case a dentist was offered as a witness for the defendant as to the extent of injuries suffered which knocked some of his teeth loose. We there held that a dentist was not a physician, and that the statute would not be extended to include persons not within its terms, and further that there was no sufficient statement of facts expected to be developed by this witness if permitted to testify. As shown by the record, that case called for the testimony of a dentist. To a suggestion of error filed therein, Judge Griffith said as follows: `To the rule last stated there are a few exceptions, and one of these is when a witness is tendered and it is sought to examine him upon matters which the law forbids him to disclose. For instance, the law forbids that an attorney shall disclose the knowledge which he has acquired from or for his client in and about his client's business. When an attorney is placed on the witness stand and, without his client's consent, it is attempted to interrogate him about his client's business, the witness is not only privileged to refuse to answer, it is his duty to refuse. And the offerer cannot state into the record what he expects to prove by that witness, for the law denies the right to prove by that witness anything of the matters sought to be elicited. Likewise as to a physician, upon which subject this court said in United States F. & G. Co. v. Hood, 124 Miss. 548, 571, 87 So. 115, 15 A.L.R. 605: "The evidence of a physician ought not to be received before the court, and it is error for the court to proceed upon the idea that the judge and the public may hear the statement of the physician in such case, though it be excluded from the jury." In these cases, if the knowledge sought to be placed in the record was acquired during the existence of the relationship which makes the information privileged, then the inquiry is not permitted to proceed further than to develop the actual existence of the privileged relationship.'
It will be seen that we have distinctly held that it is not permissible to examine a physician over the objection of a patient as to matters communicated to the physician, or learned by him as the result of an examination, or communications between a physician and patient. The object of the statute is not merely to protect parties from the result of lawsuits which the evidence might affect, but the object of the statute is to permit people freely to consult physicians about their physical or mental condition, and about any treatment for any ailment they may have or think they have. (174 Miss. at 695, 696, 165 So. at 302).
In Gulf Refining Co. v. Myrick, 220 Miss. 429, 71 So.2d 217 (1954) defendant called one of the physicians who had examined plaintiff. The plaintiff objected and claimed the physician-patient privilege. Counsel for defendant then stated to the court that he wanted to develop the record up to the point where objection by the plaintiff would be interposed. In the absence of the jury defendant's attorney offered to prove by the physician that he examined plaintiff on the day following the accident and continued to treat her until she had recovered. Counsel also stated that he wanted to show that the physician was available as a witness, had his records with him, and was prepared to testify as to his examinations and findings. The trial judge sustained the objection and defendant argued on appeal that he desired to use the physician as an expert witness and have him answer hypothetical questions, but this Court noted that, "No such statement was made to the trial court." Under this factual situation we held:

*1099 Under Section 1697, Code of 1942, all communications between physician and patient are privileged and the physician shall not be required to disclose the same in any legal proceeding except at the instance of the patient. Appellee was entitled to object to Dr. Boone's disclosing what he may have learned from his examination of her. Appellant obtained an instruction which told the jury that Mrs. Myrick could waive the statute and permit the doctor to testify either in her own behalf or as an adverse witness, and another instruction which told the jury that the defendants could not compel Dr. Boone to testify over plaintiff's objection and that the jury is warranted in inferring that his testimony would have been unfavorable to plaintiff if he had been permitted to testify. By these instructions, we think that appellant obtained all to which it was entitled in connection with the proffered testimony of the doctor. (220 Miss. at 436, 71 So.2d at 219).
The case at bar is distinguishable from Myrick because, in Myrick, the trial court was not advised that defendants wanted to question the physician about matters which were not privileged, while in this case the court was advised by the defendants that they desired to question the physicians about matters which were not privileged.
We fail to find any cases decided by us on the precise question presented here; however, the Court of Appeals of Ohio addressed this issue in Vincenzo v. Newhart, 7 Ohio App.2d 97, 219 N.E.2d 212 (1966). The plaintiff, Newhart, received treatment for the injuries sued for from his personal physician. At the trial plaintiff called two other doctors but did not call his attending physician. Defendant subpoenaed the attending physician whereupon plaintiff moved that the trial court deny the defendant the right to call his attending physician because of the privilege afforded under the Ohio statutes. The trial judge sustained plaintiff's objection and instructed defense counsel to refrain from calling the physician and stated: "To rule otherwise would seem to make a farce out of the privileged communication statute." On appeal the Ohio Appellate Court reversed and stated:
The question with which we are confronted in this case is whether the privileges afforded by Section 2317.02, Revised Code, are so broad as to preclude the calling of an attending physician as a witness where the privilege has not been waived by the patient. (7 Ohio App.2d at 99, 219 N.E.2d at 214).
.....
Section 2317.02, Revised Code, provides:
`The following persons shall not testify in certain respects:
`(A) * * * a physician, concerning a communication made to him by his patient in that relation, or his advice to his patient, but the * * * physician may testify by express consent of the * * * patient * * * and if the * * * patient voluntarily testifies, the * * * physician may be compelled to testify on the same subject;
`* * *.' (Emphasis added.)
At the outset, it is to be noted that the language of the statute is not couched in such terms as to make an attending physician an incompetent witness, but merely says that he shall not testify in certain respects, namely as to communications and advice.
Diligent search has uncovered no fact situation exactly analogous to the one at bar. (7 Ohio App.2d at 99, 100, 219 N.E.2d at 214).
.....
It appears to us that the danger inherent in the defendant's contention that the doctor cannot even take the witness stand where the privilege is claimed is that for all practical purposes no attending physician would be a proper defense witness in any trial where the privilege is asserted. This would seem to be a considerable broadening of the legislative intent, which is that the attending physician be precluded only from testifying in `certain respects.'

*1100 On the other hand, plaintiff asserts, and the trial court held, that any other conclusion would put the plaintiff in the position (having chosen not to call the attending physician in his case in chief) of appearing to hide some evidence prejudicial to his case by being forced to assert his privilege only after the physician has been called as a witness. Though it be conceded that this uncomfortable dilemma might well arise, yet to allow the plaintiff to so control the defendant's case would effectively deny to the defendant competent testimony of plaintiff's attending physician concerning matters outside the scope of the privilege. This is especially so in the instant case, where but one medical witness was called by the defendant. (7 Ohio App.2d at 101, 219 N.E.2d at 215).
.....
One can conceive of many competent questions which could be propounded to an attending physician, which would fall outside the limitation relative to communication and advice covered by the statute.
Such questions directed to a witness and the admissibility of the answers thereto could only be ruled upon in the ordinary course of a trial, once the witness had taken the oath and been seated.
Broad discretion is vested in the trial court to guard against unfair innuendoes which might arise as a result of trial strategy. And if, as is sometimes the case, such events do occur in the course of a trial, the jury can be firmly instructed to disregard them.
But to preclude an otherwise competent witness from even taking the stand because of the fear of such eventuality is clearly an abuse of discretion and gives far more latitude to the statute than was the legislative intent. (7 Ohio App.2d at 102, 219 N.E.2d at 215, 216).
In our case the defendants obtained an instruction that plaintiff had the right to claim as privileged the communication between her and the two physicians sought to be called as witnesses, but when she claimed the privilege, the jury could infer that, if the physicians were permitted to testify, their testimony would have been adverse to the interest of the plaintiff. This instruction was first authorized by our decision in Killings v. Metropolitan Life Ins. Co., 187 Miss. 265, 192 So. 577 (1940).
We hold that it was error to sustain the motion in limine because the privileged communication statute between physicians and patients does not make a physician incompetent as a witness for all purposes, but only prevents the physician from testifying as to any privileged communication. There are competent questions, which may be asked of an attending physician, which fall outside the prohibition of the statute. When the court denied defendants the right to subpoena and introduce otherwise competent witnesses, this extended the privileged communication statute more than the legislature intended.

II.
The next assignment of error which we consider states:
The Court erred in permitting Appellee to establish prima facie the reasonableness and necessity of certain medical expenses, while sustaining Appellee's motion in limine precluding testimony of two doctors and a medical records director to rebut such presumption of reasonableness and necessity.
Under this assignment of error, defendants contend that, permitting plaintiff to establish the necessity of reasonableness of her medical expenses by introducing the bills from various doctors and hospitals as authorized by statute,[2] thereby making the bills prima facie evidence that the treatment *1101 covered by the bills was necessary and the charges therefor reasonable, coupled with sustaining plaintiff's motion in limine, deprived defendants of due process of law. They further contend that the action of the court effectively precluded them from rebutting the statutory presumption that the medical expenses covered by the bills were necessary and reasonable, thereby raising prima facie evidence to an irrebuttable presumption.
Before the enactment of section 41-9-119, the common law was that medical expenses, where claimed as an element of damage, required proof connecting the bills for such medical expenses with the injury or disease sued on, together with proof that the charges for the medical expenses claimed were reasonable. Bryan Bros. Packing Co. v. Grubbs, 251 Miss. 252, 168 So.2d 289 (1964). The purpose of the statute was to simplify the procedure for proving medical expenses where claimed as an element of damages. It permits a party to introduce bills for medical expenses which have been paid or incurred, upon the testimony of the party that the bills were incurred or paid because of the illness, disease or injury sued on and makes the bills prima facie evidence that the treatment was necessary and the charges therefor were reasonable.
However, the statute does not cut off the right of a defendant to controvert the presumption established by the introduction of such bills. Defendants argue that they were prevented from calling witnesses to rebut the presumption that the treatment covered by the bills was necessary for treatment of the injury complained of and the charges were reasonable.
Plaintiff introduced medical bills summarized as follows:

Dr. Edwin Hemness $ 127.00 (8-4-74 to
 10-8-74)
Northwest Mississippi
 Regional Medical Center 52.50 (7-17-74)
Drs. Ellis and Clark
 (radiology) 14.00 (7-17-74)
Northwest Mississippi
 Regional Medical Center
 Pharmacy 4.73 (7-17-74)
Dr. Orlando J. Andy 546.00 (3-24-75 to
 10-13-75)
University of Mississippi
 Medical Center 388.10 (7-21-75 to
 7-24-75)
University of Mississippi
 Medical Center (radiology) 28.00 (3-24-75)
Stone's Drug Store, Marks,
 Mississippi 69.22 (3-28-75 to
 1-7-76)
Dr. Joe Campbell 92.00 (9-24-75 to
 10-3-75)
Drs. Ellis and Clark 53.00 (9-26-75 to
 10-1-75)
Northwest Mississippi
 Regional Medical Center 658.70 (9-24-75 to
 __________ 10-1-75)
 TOTAL $2,125.25

We have enclosed in parenthesis the dates covered by the bills on the above schedule.
The medical bills introduced by plaintiff totaled $2,125.25. Defendants sought to call two physicians whose bills, together with the last hospital confinement, totaled $877.70. Defendant was injured in a collision which occurred on July 16, 1974 and it is observed that Dr. Hemness' bill covers a period from August 4, 1974 to October 8, 1974, Dr. Campbell's bill covers a period from September 24, 1975 to October 3, 1975 and the last hospital confinement covered a period from September 24, 1975 to October 1, 1975.
When the medical bills were introduced by the plaintiff, defendants pointed out to the court that a large amount of the medical expenses were represented by confinement of the defendant in the Northwest Mississippi Regional Medical Center and the services of the two physicians whom they sought to call as witnesses. Defendants stated that they desired to examine the physicians on two matters, (1) whether the treatment covered by the bills was necessary or related to the injury of plaintiff, or (2) whether the charges were reasonable.
Defendants argue that they should not have been prevented from calling the physicians to examine them on these matters because the physicians had examined plaintiff, prescribed treatment for her, and would be in the best position to know *1102 whether the treatment covered by the bills was for the injury sustained by plaintiff in the collision.
We hold that the physicians were not incompetent to testify on the question of the reasonableness of the charges for medical expenses, nor were they incompetent to testify whether the treatment of plaintiff covered by their bills, or the bill for hospitalization, where they were the attending physicians, was related to and necessary for treatment of the injury which was the subject matter of the lawsuit. The privileged communication statute does not prohibit testimony of the doctors on these two matters and the court erred when it refused to permit them to testify.
Defendants may not ask the physicians the nature of the disease or injury covered by their treatment, but the inquiry must be limited to whether the treatment was related to the injury complained of by the plaintiff. Killings v. Metropolitan Life Insurance Co., 187 Miss. 265, 192 So. 577 (1940) dealt with the physician-patient privileged communication statute, section 13-1-21, and contains an exhaustive discussion of the statute. In Killings we said:
Is it to be supposed that any honest majority of our legislature ever contemplated that this statute could be put to any such a use as that a party claiming to be suffering with a particular malady or injury could, for the purposes of a lawsuit, bring physician after physician to observe and examine him, and when from the number he had found one, who by his incompetency or want of moral sensibilities, or for other reasons, was willing to grossly overstate or misstate the malady or injury, he could use only that one, and thereby render the opponent party utterly helpless, even to the extent of forbidding the comment or inference which the questioned instruction here presents? We decline any such a supposition until the legislature shall enact a statute so explicit in its terms as to expressly exclude that declination. How far may a statute of this kind go and not come into conflict with the constitutional requirements of due process? And the unjust uses to which the statute has been attempted to be put, with the claim at the same time that the opposite party was rendered utterly helpless, is aptly illustrated by the two cases, Beard v. Williams [172 Miss. 880, 161 So. 750] and Robinson v. Haydel [177 Miss. 233, 171 So. 7], supra. (187 Miss. at 274, 192 So. at 579). (Emphasis supplied).
We think the question posed in Killings is pertinent to the question raised by this assignment of error, and hold that precluding the defendants from examining the physicians within the narrow scope permitted above amounts to a violation of due process.
For the same reasons, the Medical Records Director of Northwest Mississippi Regional Medical Center was not an incompetent witness simply because the hospital records are confidential. She could testify, without stating what the records show with reference to the nature of the disease or injury for which plaintiff was treated, whether the hospital confinement was for the injuries resulting from the collision, if her knowledge was from an independent source.
AFFIRMED AS TO LIABILITY AND REVERSED AND REMANDED FOR TRIAL ON ISSUE OF DAMAGES ONLY.
PATTERSON, C.J., and INZER and SMITH, P. JJ., and ROBERTSON, WALKER and BROOM, JJ., concur.
BOWLING and LEE, JJ., dissent.
BOWLING, Justice, dissenting:
I respectfully dissent.

I.
Conceding that there would be occasions in trials involving personal injuries where the examining or treating physicians could be placed on the stand by the patient's opposition and asked questions, this is not one of those cases. The majority opinion sustains two assignments of error in regard to the patient-physician relation. We shall *1103 discuss these in reverse order as that is the way they appear in the record and the order in which they were reached during the course of the trial. This is material on the issues raised. I have no quarrel with the authorities discussed in the majority opinion. Unlike the situation here, the facts in the cited authorities fit the legal principles involved. The facts in the case before us now do not apply to those principles.
The majority opinion held that the court erred in permitting appellee to establish prima facie the reasonableness and necessity of certain medical expenses, while sustaining appellee's motion in limine precluding testimony of two doctors and a medical records librarian to rebut such presumption of reasonableness and necessity.
In the first place, the privilege communication statute had not been invoked by appellee or her attorneys, and a hearing on the motion had not been had at the time the medical bills were introduced and objection thereto made by attorneys for appellants.
On direct examination of appellee by her attorney, she was about to introduce medical, hospital and drug bills pursuant to Mississippi Code Annotated section 41-9-119 (1972). The attorney for appellants objected to the introduction of these bills and asked for a hearing in chambers out of the presence of the jury. This was done. The objection dictated into the record was:
"We submit that the best evidence in this case for the proof of these medical expenses and whether or not they are reasonable and whether they were necessary for the treatment of the alleged back injury will be these doctors and the proof from the hospital. And that by a back door, secondary evidence is attempted at this point; that is not the best evidence, and should not be received at this time. He is attempting to do by indirection what he will not permit us to do directly. We think this is going to poison the minds of the jury that plaintiff has incurred large medical expenses in connection with this neck injury and the only one who is going to say that is the plaintiff herself. We are going to be prohibited from offering the testimony of several doctors as to whether or not these medical expenses were necessary in connection with this injury. We object to this proof at this time."
As hereinbefore stated, the matter of whether or not the privilege would be waived under Code section 13-1-21 had not been brought to the attention of the court and the motion merely had been filed. There had not been a hearing thereon and no occasion had arisen to invoke the privilege or waive it. The attorney for appellants merely stated:
We are going to be prohibited from offering the testimony of the several doctors as to whether or not these medical expenses were necessary in connection with this injury.
There had been no offer of proof by appellants or any indication whatever that they would offer evidence from the treating doctors or anyone else that the bills about to be introduced were unreasonable or unnecessary. That point had not been reached. The majority opinion, therefore, is erroneous when it states that "The court permitted appellee to introduce the medical, hospital and drug bills while sustaining appellee's motion in limine." At the time the bills were presented, their introduction clearly was authorized under the statute.
In effect, the majority opinion permits the litigant when bills are offered under the statute to object thereto merely by saying that we might later offer proof that they are unreasonable or unnecessary. This completely destroys the continuity of a trial and invalidates the statute on the introduction of medical bills.
The first assignment of error discussed in the majority opinion is that "the court erred in sustaining appellee's motion in limine requiring Appellants not to bring two doctors and a medical records librarian into the courtroom during the trial in the presence of the jury."
At the outset, it is noted in this assignment that there was no prohibition against appellants from later offering the witnesses and offering to examine them preliminarily *1104 in the court's chambers to see if their testimony would come within an exception to the privileged communication statute. As will be seen later, appellants never made this request or offer.
On cross-examination of appellee, appellants' attorney was inquiring of appellee about her physical condition and treatment of her injuries. Appellee was asked:
Q. Now, Mrs. Jones, if anyone knows anything about your condition that can tell this jury really what your injury is and the extent of it, it would be these doctors that we have gone over here, isn't it?
A. Yes.
Q. They know more about your condition than you do, don't they?
A. Well not really, I mean I know as much as they do about my condition, or more, because they don't know how much pain and suffering I went through.
Q. They have taken x-rays and they are experts in their field, aren't they?
A. That's right.
Q. Now are you willing that these men testify to this jury about your condition?
The attorney for appellee then objected and the court stated that he would hear the objection in chambers. This was done. It is clear from the record that the matter of bringing the case to the point where a decision had to be made pertaining to the privileged communication statute was deliberately brought about by the cross-examination of appellee. It is noted that the manner in which this was brought about had nothing whatever to do with the reasonableness or necessity of the bills. Attorney for appellants based this question solely on the treatment of appellee by the physicians. This required the attorneys for appellee to then make a decision pertaining to whether or not to waive the privilege. They chose not to do so and asked for a hearing on the motion prohibiting the doctors and hospital records librarian from being called to the courtroom and placed on the stand in front of the jury. At no time during these proceedings did attorneys for appellants give any indication whatever that they intended to call the doctors and the medical records librarian for the purpose of proving that the bills were unnecessary or unreasonable. (Emphasis supplied). Appellants' attorney stated:
Your Honor, we object to counsel advising the witness on cross examination. Now, this witness is on cross examination, and has testified in substance as we understood her testimony to be that she had muscle spasms and headaches and so forth, all of which originated from this accident; she's attributing these things to the accident, and attributing them as the cause of her inability to pursue her work with Avon and other work that she would like to have. Now, we come along on cross examination and ask her, "These doctors have all seen you in connection with this disability that you have described; they've made x-rays and you have been in the hospital." Now, our question essentially is aren't they in a better position to know what your problem is than you are attributing it to this accident, and saying that it makes her physically unable to work. We think as a cross examination question that's a valid question, and also further reducing the weight of what she says is the cause of her disability and extent of it, that they  that there are other persons that will know better what her disability is and the extent of it than she is, preparing ourselves for putting other witnesses on. We think all those are  aside from  we're not offering these other doctors at this point, Your Honor, as medical witnesses; we are impeaching her diagnosis of herself and her attributing this disability and pain to this accident.
The attorney further stated:
We would like to bring those witnesses to the courtroom and qualify them, and then ask them if they have treated and examined Mrs. Jones, and have the court overrule  have the court sustain his objection at that time.
.....

*1105 All right, sir, may I ask in the presence of plaintiff's counsel and in the presence of the court in chambers if we will be permitted to follow through and place on the witness stand Dr. Joe Campbell and Dr. Edwin Hemness, and Mrs. Gwin Davis, as Medical Records Librarian of the Northwest Mississippi Regional Medical Center with the medical records of that Center pertaining to all treatment of Mrs. Patsy Jones subsequent to July 16, 1974, offering these in evidence during the trial of this afternoon. Will the Court permit us to offer those witnesses and offer those records into evidence before the Jury?
In answer, the court stated: "You have a right to state to the jury that you are offering these things and that the privilege was invoked."
It is again noted that at no time did the attorneys for appellants make any offer or request to place anyone on the stand, much less the doctors and the medical records librarian, for the purpose of proving that these bills were either unnecessary or unreasonable.
The court concluded during this conference, brought on by the interrogation by appellants' attorneys of appellee that appellee properly had invoked the privilege communication statute and the doctors and medical records librarian could not be called for the purposes stated above by appellants' attorneys. (Emphasis ours)
The trial proceeded and never was any mention made of calling the doctors and medical records librarian for the purpose of proving the bills unnecessary or unreasonable. At no time during appellants' presentation of their case was it ever stated to the court that they desired to call anyone, plaintiff's doctors or others, to rebut the presumption of the necessity and reasonableness of the bills introduced prior to the time the privileged communication statute was invoked at the instigation of appellants' attorney.
Appellants requested and were given the harsh instruction that they had offered the doctors and that appellee had invoked the privilege, and "you may reasonably infer therefrom, that if the doctor had testified his testimony would have been adverse to the interest of the plaintiff."
This instruction went to diagnosis, treatment, bills and every relationship between appellee and the doctors in question. Under this instruction, appellants' attorney had the clear right, and probably did, argue that the bills were unreasonable and unnecessary because the court had told the jury in the instruction that the doctors' testimony would be "adverse" to the interest of the plaintiff.
It is, therefore, inescapable that the principle set out in the majority opinion, that is, that under certain circumstances, the examining or treating physician may be placed on the stand to testify about matters not involved in the privileged communication statute, is just not pertinent to this case.

II.
I should go further and discuss the proposition that assuming the appellants had properly attempted to present the two doctors in question and the medical records librarian for the sole purpose of proving the bills either unnecessary or unreasonable, their testimony on these points would inescapably be in violation of the privileged communication statute prohibiting any testimony by the physician or surgeon that in any way pertains to communications made to them by their patients. Assuming that these witnesses properly were identified and called, and on the stand they were asked by appellants' attorney whether their bill was necessary in regard to treatment of plaintiff for injuries, about which the case is being tried, and assuming that this doctor did not think that part or all of his treatment involved those injuries, there would be no way for him even to say the word "No" without taking into consideration prior communications received by him from his patient. Any question and answer on the subject could not be separated from the communications between patient and physician.
*1106 Going to the next proposition, that his bill was unreasonable, certainly the doctor could not impeach his own bill. Further, suppose that the court erroneously permitted him to impeach his bill, he could not do so without taking into consideration communications received by him from his patient. We have to bear in mind that the patient's adversary has placed this doctor on the stand as a witness. He cannot cross-examine his witness and try to bring out parts of the bill which he claims unreasonable if the doctor states they were reasonable. With deference, there is no way to question the doctor and medical records librarian in this case without any answer being at least partly based on communications from the patient.
Therefore, it is clear to this writer that the exception to the privileged communication statute, erroneously advanced by appellants in this case, cannot be invoked without violating the terms of the privileged communication statute. Other exceptions, such as hypothetical questions, might be, but we are not involved with them here. The majority opinion makes a positive ruling that any examining or treating doctor may be called over objection of the patient and examined regarding the necessity or reasonableness of his bill. The attorney opposite the patient is given legal license to go on a "fishing expedition." In effect, this holding legislates the privileged communication statute out of the Code. I can reach no other conclusion. I am not prepared to legislate by judicial fiat. I would prefer that the proper body of elected officials do this.
In my humble opinion, the cause should be affirmed.
LEE, J., joins in this dissent.
NOTES
[1] All communications made to a physician or surgeon by a patient under his charge or by one seeking professional advice are hereby declared to be privileged, and such physician or surgeon shall not be required to disclose the same in any legal proceeding except at the instance of the patient ...
[2] Section 41-9-119 Mississippi Code Annotated (1972) [Ch. 375, § 10 Gen.Laws (1971)] provides:

Proof that medical, hospital, and doctor bills were paid or incurred because of any illness, disease, or injury shall be prima facie evidence that such bills so paid or incurred were necessary and reasonable.